**UNITED STATES, Appellee,**

v.

**Clyde E.L. MANSFIELD, Staff Sergeant U.S. Air Force, Appellant.**

No. 67,973.
CMR No. 24758.

U.S. Court of Military Appeals.

Argued June 3, 1993.

Decided Sept. 30, 1993.

For Appellant: *Major Marilyn A. Gordon* (argued); *Colonel Terry J. Woodhouse* (on brief); *Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock, Major Alice M. Kottmyer.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon* and *Colonel Jeffery T. Infelise* (on brief);

**416**

Lieutenant Colonel Brenda J. Hollis, Major Jeffrey C. Lindquist, Major Morris D. Davis, Major Paul H. Blackwell, Jr., Captain James C. Sinwell.

Opinion of the Court
COX, Judge:

I

The critical facts of this appeal can be succinctly stated: Appellant made a highly incriminating statement to one of his original trial defense counsel, though he later recanted the incriminating portions of it. This statement, when made, clearly fell within the protection of the attorney-client relationship. Mil.R.Evid. 502, Manual for Courts–Martial, United States, 1984. Ultimately, the incriminating version of the statement was provided by the defense to various psychiatrists enlisted by the defense to assist in preparation and advancement of an insanity/partial-mental-responsibility defense. At the court-martial in question, appellant presented an insanity/partial-mental-responsibility defense. The various defense experts testified on direct examination that appellant lacked mental responsibility or was only partially mentally responsible.

Over defense objection, the military judge permitted the prosecution to cross-examine the defense experts about the content of the incriminating statement and its impact on their conclusions. The judge also permitted the prosecution, in rebuttal, to introduce into evidence a copy of the statement. The primary questions before us, then, are whether the judge erred in permitting the prosecution access to and use of the incriminating statement.[1]

So framed, the issues admit of Hornbook-style resolution. We hold that the judge did not err in permitting cross-examination of the defense experts or in permitting introduction of the statement.

II

The critical facts emerge from the somewhat more involved backdrop of a court-martial, a limited evidentiary hearing, and a full rehearing. Prior to the initial trial, appellant made a series of statements, both oral and written, to his counsel. These several statements varied widely in content as to the degree of recollection and culpability admitted. Ultimately, according to counsel, appellant settled upon a particular, innocuous version of the facts. This version was provided selectively to potential civilian expert witnesses enlisted to assist in the preparation of a mental-responsibility defense. Appellant was thereafter tried (September 4–November 27, 1984) by a general court-martial on a charge of premeditated murder. Art. 118(1), Uniform Code of Military Justice, 10 USC § 918(1). While this court-martial was in progress, defense counsel discovered that appellant had made a seriously incriminating admission to one of the defense psychiatrists. Realizing that the prosecution would readily discover this admission through cross-examination, defense counsel elected not to call the witness or to present the mental responsibility defenses in order to prevent disclosure of the admission. 24 MJ 611, 615–16 (AFCMR 1987). In default, the

1. These issues, as raised by appellate defense counsel, were:

I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN FINDING THAT APPELLANT WAS NOT DENIED A FAIR RETRIAL AS A RESULT OF THE GOVERNMENT'S ACCESS TO, AND PROBABLE USE OF, ATTORNEY–CLIENT PRIVILEGES THAT WERE DISCLOSED IN AN EARLIER *DUBAY* HEARING ON APPELLANT'S SUCCESSFUL CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

II

WHETHER THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF APPELLANT, WHEN HE ADMITTED PROS. EX. 65.

In addition, we granted review of two separate issues wherein appellant challenged the authority of the military judge and the Court of Military Review under the Appointments Clause. U.S. Const., art. II, § 2, para. 2, cl. 2. We resolve both of those issues adversely to appellant in accordance with our opinion in *United States v. Weiss*, 36 MJ 224 (CMA 1992), aff'd, —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

court-martial was contested on a theory of failure of proof, and appellant was convicted as charged.

On appeal before the Court of Military Review, appellant attacked his trial defense team. He theorized that counsel must have been incompetent in bungling and failing to present his lack-of-mental-responsibility defenses. In starkly inconsistent alternative, however, appellant also suggested that counsel may have been attempting to perpetrate a fraud upon the court-martial. In appellant's hypothesis, the fraud would have arisen from counsel's preparation and dissemination of the sanitized version of the statement, which counsel knew to be false and misleading, to potential defense witnesses. In attempting to manipulate the experts and thus to "create" a defense where none existed, counsel's actions allegedly prejudiced appellant when it appeared the true facts would come out, collapsing the fraudulent defense in midtrial. Supplemental Brief on Behalf of Appellant (Feb. 7, 1986).

In the face of these serious allegations before the Court of Military Review, the Government joined appellant in petitioning that court to order a limited hearing into the conduct of counsel and the preparation of the mental-responsibility defenses. *See* *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). The court obliged the parties. Unpublished order dated March 5, 1986.

The military judge conducting the limited hearing compelled the new defense team, over their objection, to produce both the incriminating and the innocuous versions of appellant's statement. Both were received as hearing exhibits. The hearing (May 6–8, 1986) featured an intense grilling of all members of the original defense team regarding their preparation of the mental-responsibility issues. Particular emphasis was placed on the circumstances surrounding the origin of the incriminating statement and its sanitized counterpart. In addition, both of the psychiatrists slated to

testify for the defense at the original trial testified. They indicated that, from a psychiatric point of view, appellant's incriminating revelation did not significantly alter their conclusions regarding his mental state at the time of the killing. At the conclusion of the hearing, the military judge entered extensive findings, including the finding "that the potential defenses of insanity and of partial mental responsibility were not 'created' defenses...." Findings at 15.

On return to the Court of Military Review, appellant omitted the fraud allegation. He relied exclusively on the claim of incompetence through failing to prepare and present the mental-responsibility defenses. The Court of Military Review agreed that the original trial defense team's preparation on the issue of mental responsibility was inadequate. Accordingly, that court set aside the findings of guilty and the sentence, authorizing a rehearing. 24 MJ at 617–18.

The rehearing (June 29–December 9, 1987) was duly convened by a different convening authority. None of the original defense team represented appellant at the rehearing. There, appellant formally asserted defenses of lack of mental responsibility and partial mental responsibility. In support of these defenses, a number of experts were presented as defense witnesses. As previously indicated, each had been provided by the defense with the incriminating version of appellant's pretrial statement. Each witness acknowledged taking appellant's statement into consideration in articulating his opinion at trial. As indicated, the Government was permitted, over defense objection, to cross-examine these witnesses about the statement[2] and to introduce a copy of the statement into evidence. Appellant was again convicted of premeditated murder and was sentenced to a dishonorable discharge, confinement for life, reduction, and forfeitures. The convening authority approved the sentence,

---

2. Indeed, as to each defense expert, it appears that it was the defense on direct examination

that first adverted to the incriminating statement.

and the Court of Military Review affirmed. 33 MJ 972 (1991).

## III

■ Before us, appellant again focuses on the turbulence generated by the initial trial defense team. He argues that their inadequacies compelled him to attack them in order to demonstrate the unfairness of his trial. To that end, he argues, it was necessary to bring into the light of day his highly incriminating statement—this statement which otherwise would have remained enshrouded by the attorney-client privilege. Thus, appellant contends, he was unfairly penalized in his subsequent rehearing by the prosecution's cross-examination of his witnesses and by the receipt in evidence of the statement.

To put this in context, in order to present his mental-responsibility defenses *at the second trial*, appellant found it necessary to call expert witnesses, armed with his incriminating statement, to testify about his mental condition at the time of the killing. In providing his witnesses with the statement in this manner, appellant waived his privilege with respect to it. But for this fact, we agree there would have been a dynamite issue.[3] As the case stands, however, its resolution becomes a paradigm of simplicity.

■ There is no physician-patient or psychotherapist-patient privilege in federal law, including military law. *See* Mil. R.Evid. 501(d); Drafters' Analysis, Manual, *supra* at A22–34 and A22–35 (Change 2). Under certain circumstances, here presumptively present, a physician, psychotherapist, etc., who assists the defense in the preparation of a defense may fall within the scope of the attorney-client privilege. Statements or information provided to such experts are privileged to the extent of the protection of the attorney-client privilege. *United States v. Tharpe*, 38 MJ 8, 15 n.5 (CMA 1993); *United States v. Toledo*, 25 MJ 270 (CMA 1987), original opinion adhered to on recon., 26 MJ 104 (CMA), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). However, when such experts are called as a witness on behalf of an accused and the witness has relied upon statements of the accused in formulating an opinion,[4] the attorney-client privilege terminates with respect to those matters placed in issue by the expert's testimony. *United States v. Toledo*, 25 MJ at 274–76; *United States v. Frederick*, 3 MJ 230, 233–34 (CMA 1977); *cf.* Mil.R.Evid. 302(c); *see generally 1 McCormick on Evidence*, ch. 11 § 103 at 384 (J.Strong 4th ed.1992). Further, any expert who offers a testimonial opinion is subject, at the request of a party opponent, "to disclose the underlying facts or data on cross-examination." Mil. R.Evid. 705. Thus, the rehearing military judge did not err in permitting the challenged cross-examination of the defense experts.

---

3. The scenario could potentially arise anytime an accused makes an incriminating statement, falling within the attorney-client privilege, to counsel. If the accused subsequently accuses counsel of unethical conduct or incompetence in connection with that statement, such that the statement must be revealed to enable a court to determine whether unethical conduct or prejudice has occurred, has the accused waived the attorney-client privilege with respect to that statement, and if so, to what extent? Does it matter if the alleged unethical conduct or incompetence has not occurred? We defer resolving these matters until such time as they are in issue before us.

4. In this case, the majority of the Court of Military Review squarely found that it was "clear that defense psychiatrists used the statement in reaching a diagnosis." 33 MJ at 985.

The record of trial strongly supports this conclusion, so we must accept the Court of Military Review's finding. Art. 67(c), Uniform Code of Military Justice, 10 USC § 867(c) (1989). Thus, technically, it is not necessary on this record for us to reach a broad conclusion regarding admissibility of any and all statements made by an accused to a physician/psychotherapist tendered by the defense, regardless whether the statements were "used" by the expert in arriving at conclusions. *But cf. Noggle v. Marshall*, 706 F.2d 1408 (6th Cir.1983), *cert. denied*, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *State v. Tensley*, 249 N.W.2d 659 (Iowa 1977); *Townsend v. State*, 420 So.2d 615 (Fla.App.1982); Annotation, *Privilege, in Judicial or Quasi-Judicial Proceedings, Arising From Relationship Between Psychiatrist or Psychologist and Patient*, 44 A.L.R.3d 24 (1972).

■ With respect to the prosecution's direct introduction of the incriminating statement, it was an admission by a party-opponent, Mil.R.Evid. 801(d)(2), and thus was admissible. Its relevance and authenticity were established beyond cavil. These two issues are without merit.

## IV

■ The remaining granted issue asks whether the military judge correctly instructed the court members regarding the defense of partial mental responsibility; we resolve the issue as did the Court of Military Review. 33 MJ at 990. The Uniform Code of Military Justice has never identified a defense of "partial mental responsibility." However, the Manual for Courts–Martial in effect for appellant's initial trial (Manual for Courts–Martial, United States, 1969 (Revised edition) (as amended through Change 7, effective October 1, 1982)), described a limited defense of "partial mental responsibility," as being: "A mental condition, not amounting to a general lack of mental responsibility, which produces a lack of mental ability, at the time of the offense, to possess actual knowledge or to entertain a specific intent or a premeditated design to kill...." Para. 120c.[5]

Without defense objection, the military judge rendered an instruction at the rehearing on the defense of partial mental responsibility in general accordance with the standard instructions set forth in paragraph 6–5, Military Judges' Benchbook at 6–4 (Dept. of the Army Pamphlet 27–9(1985)). Appellant now complains that the instruction was deficient in that the judge omitted a phrase indicating that appellant need not be insane in order to qualify for the defense of partial mental responsibility. Final Brief at 90. Like the Court of Military Review, we have carefully read the entirety of the military judge's instructions. There is no intimation in the instructions that appellant needed to be "insane" in order to qualify for partial mental responsibility. Indeed, we can detect no linkage whatsoever in the instructions between the limited defense of partial mental responsibility and the complete defense of "insanity" (lack of mental responsibility). We do not doubt that the clarification now urged by appellant would have been appropriate. However, we do not believe it was a *sine qua non* or that the instructions given were incomplete or confusing. We hold that the objection now advanced was waived, and no plain error occurred. *United States v. Fisher*, 21 MJ 327 (CMA 1986).

The decision of the United States Air Force Court of Military Review on rehearing is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

5. The Manual for Courts–Martial, United States, 1984, now deletes reference to a defense of partial mental responsibility. *But see United States v. Berri*, 33 MJ 337 (CMA 1991); *Ellis v. Jacob*, 26 MJ 90 (CMA 1988).