UNITED STATES, Appellee,

v.

Hector RODRIGUEZ, Specialist,
U.S. Army, Appellant.

No. 99–0224.
Crim.App. No. 9700189.

U.S. Court of Appeals for
the Armed Forces.

Argued March 2, 2000.

Decided Sept. 25, 2000.

Sullivan, J., filed opinion concurring in part and in the result.

Gierke, J., filed dissenting opinion in which Cox, Senior Judge, joined.

CRAWFORD, C.J., announced the judgment of the Court and delivered an opinion, in which EFFRON, J., joined. SULLIVAN, J., filed an opinion concurring in part and in the result. GIERKE, J., filed a dissenting opinion, in which COX, S.J., joined.

For Appellant: *T. Michael Guiffré* (argued); *Michael J. Nardotti, Jr.* and *Captain Donald P. Chisholm* (on brief); *Colonel John T. Phelps II, Colonel Adele H. Odegard,* and *Captain Kirsten V. Campbell–Brunson.*

For Appellee: *Captain Kelly D. Haywood* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham* (on brief).

Chief Judge CRAWFORD announced the judgment of the Court and delivered an opinion in which Judge EFFRON joined.

Contrary to his pleas, appellant was found not guilty by a military judge sitting alone of malingering but guilty of wounding himself without intent to avoid hazardous service, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The convening authority approved the sentence of a dishonorable discharge, 354 days' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 49 MJ 528 (1998). We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS THE TESTIMONY OF DR. JOSE ALFANO BASED ON THE ERRONEOUS FINDING THAT THE PSYCHOTHERAPIST PRIVILEGE WAS NOT APPLICABLE AT COURTS–MARTIAL.

We hold that the military judge did not err in admitting the statement of Dr. Alfano.

FACTS

On May 2, 1996, appellant rigged an automatic weapon to shoot himself in the stomach. He was successful. There was extensive evidence that appellant shot himself, including his admissions to his platoon leader and his platoon sergeant. He was transferred from Bosnia to Landstuhl Regional Medical Center in Germany for treatment. In addition to the physical treatment, he was treated by Dr. Alfano, a

civilian psychiatrist. Dr. Alfano diagnosed appellant as having a dependent personality disorder. Appellant told Dr. Alfano "that he was not suicidal" but had intentionally discharged the weapon in an attempt to be reunited with his estranged wife in Baumholder, Germany.

"At trial, appellant's defense was that ... he abandoned his attempt to shoot himself but that the weapon accidentally fired while he was retrieving it. Appellant's defense counsel challenged the admissibility of appellant's statements to Dr. Alfano claiming they were protected by the federal psychotherapist-patient privilege recognized in *Jaffee v. Redmond* [,]" 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). *See* 49 MJ at 529.

The military judge denied appellant's motion to suppress this evidence because under Mil.R.Evid. 501, Manual for Courts–Martial, United States (1998 ed.), and Article 36, UCMJ, 10 USC § 836, the federal psychotherapist-patient privilege "is not applicable" to the military.

## DISCUSSION

The issue in this case is whether the psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee* as being part of federal common law is applicable to trials by courts-martial. This issue requires consideration of the relationship between the Federal Rules of Evidence and the Military Rules of Evidence.[1]

The Proposed Federal Rules of Evidence were submitted to the Supreme Court in October 1971. The Rules as originally approved by the Supreme Court on November 20, 1972, set forth in Article V nine nonconstitutional privilege rules applicable to federal trials, including a proposed psychotherapist-patient privilege. After these proposed Rules were sent to Congress, the Subcommittee on Criminal Justice of the Committee on the Judiciary of the House of Representatives held open hearings on the Proposed

Rules. As a result of these hearings and numerous conferences, Congress did not accept the proposed privilege rules because a consensus could not be achieved as to a number of privileges. S.Rep. No. 1277, 93d Cong.2d Sess. (1974), *reprinted in* 1974 U.S.Code Congressional & Administrative News 7051, 7052, 7053, 7058; *see also* Title 28 USCA Federal Rules of Evidence (Rules 701 to End) 614, 615, 620. Instead, Congress adopted Fed.R.Evid. 501:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The Rules, as revised by Congress, were approved by President Ford on January 2, 1975. Pub.L. No. 93–595, 88 Stat. 1926.

In contrast to the Federal Rules of Evidence, Congress has delegated to the President the authority to issue rules of evidence for courts-martial. *See* Art. 36. Under this authority, the President promulgated the Military Rules of Evidence in 1980, which were based upon the Federal Rules of Evidence, subject to exceptions based upon practicability and conformance with the Uniform Code of Military Justice. *See* Drafter's Analysis of Mil.R.Evid. 501, Manual, *supra* (1998 ed.) at A22–37.

The President, in the Military Rules of Evidence, did not follow the approach taken by the Federal Rules of Evidence. In-

---

1. The Military Rules of Evidence are contained in Part III of the Manual for Courts–Martial, United States (1995 ed.)(the edition applicable at appellant's court-martial). The then-enumerated privileges that parallel the 1969 Proposed Federal Rules of Evidence, 46 F.R.D. 161 (1969), included: lawyer-client (Mil.R.Evid. 502); communication to clergy (Mil.R.Evid. 503); husband-wife (Mil.R.Evid. 504); and political vote (Mil.R.Evid. 508).

stead of a general rule allowing the courts to develop privileges through a common-law approach, *see* Fed.R.Evid. 501, the rules promulgated by the President used a combination of specific rules and a limited authority to incorporate common-law privileges. As noted in the Drafter's Analysis:

> Unlike the Article III court system, which is conducted almost entirely by attorneys functioning in conjunction with permanent courts in fixed locations, the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to the worldwide deployment of military personnel. Consequently, military law requires far more stability than civilian law. This is particularly true because of the significant number of non-lawyers involved in the military criminal legal system. Commanders, convening authorities, non-lawyer investigating officers, summary court-martial officers, or law enforcement personnel need specific guidance as to what material is privileged and what is not.

Drafter's Analysis of Mil.R.Evid. 501, Manual, *supra* (1998 ed.) at A22–37. The privileges set forth by the President "provide the certainty and stability necessary for military justice." *Id.*

In *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), the Supreme Court recognized that the President may promulgate rules of evidence for the military, which

> do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

523 U.S. at 308, 118 S.Ct. 1261 (citations omitted); *see also id.* at 323 & n. 4, 118 S.Ct. 1261.

The purpose of the Military Rules was to provide predictability, clarity, and certainty through specific rules rather than a case-by-case adjudication of what the rules of evidence would be. The addition of Mil.R.Evid. 501 is constitutional and an appropriate exercise of the President's authority under Article 36. We hold that Mil.R.Evid. 501 "is a rational and proportional means of advancing the legitimate interests of the military." *See* 523 U.S. at 312, 118 S.Ct. 1261.

Mil.R.Evid. 501 provides in part:

(a) A person may not claim a privilege with respect to any matter except as required by or provided for in:

(1) The Constitution of the United States as applied to members of the armed forces;

(2) An Act of Congress applicable to trials by courts-martial;

(3) These rules or this Manual; or

(4) The principles of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual.

\* \* \*

(d) Notwithstanding any other provision of these rules, information not otherwise privileged does not become privileged on the basis that it was acquired by a medical officer or civilian physician in a professional capacity.

Although the originally enumerated privileges contained within Mil.R.Evid. 502–509 establish the stability necessary for military justice, the President, in promulgating Mil. R.Evid. 501, provided a modest degree of flexibility in the application of federal common-law privileges to courts-martial. Drafter's Analysis of Mil.R.Evid. 501, Manual, *supra* (1998 ed.) at A22–37. Mil.R.Evid. 501(a)(4) adopts the privileges recognized at common law pursuant to Fed.R.Evid. 501, insofar as "practicable and not contrary to or inconsistent with" the Code, the Military Rules of Evidence, or the Manual for Courts–Martial. Appellant asserts that it is

through this subsection of Mil.R.Evid. 501 that the psychotherapist-patient privilege, recognized by the Supreme Court in *Jaffee*, became applicable to courts-martial. The Government argues that the psychotherapist privilege recognized in *Jaffee* cannot be adopted through Mil.R.Evid. 501(a)(4) because it is inconsistent with Mil.R.Evid. 501(d), which prevents application of a doctor-patient privilege to the military.

At the outset, it is necessary to review the state of the law when the President issued Mil.R.Evid. 501. Prior to *Jaffee*, "all 50 states and the District of Columbia" recognized "some form of psychotherapist privilege." 518 U.S. at 12, 116 S.Ct. 1923. At the time of the adoption of the Military Rules of Evidence in 1980, the federal courts were divided on the existence of the privilege. Some refused to find the privilege under Fed.R.Evid. 501,[2] while others recognized the existence of the privilege.[3]

The Court in *Jaffee* examined Fed.R.Evid. 501 which "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" 518 U.S. at 8, 116 S.Ct. 1923. It observed that Rule 501 "did not freeze the law governing the privileges of witnesses in federal trials[.]" While recognizing that a trial is a search for the truth, the Court acknowledged that public policy may require certain exemptions and exceptions to admissibility of evidence. *Id.* at 9, 116 S.Ct. 1923. Public policy protects certain communications to encourage individuals to seek assistance, *e.g.*, the attorney-client privilege. Society should also encourage an individual to seek assistance from a psychotherapist, but such assistance would not be encouraged if there were not "an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." The importance of this privilege was recognized by the Judicial Conference Advisory Committee. *Id.* at 10, 116 S.Ct. 1923. The Court noted that if the privilege was not recognized, "confidential conversations between

psychotherapists and their patients would surely be chilled[.]" *Id.* at 11–12, 116 S.Ct. 1923. The Court concluded that on the basis of "reason and experience," a psychotherapist privilege "promotes sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9–10, 116 S.Ct. 1923.

After analyzing application of the psychotherapist-patient privilege in the state and federal courts, the Supreme Court held that statements made by a police officer to a licensed clinical social worker after a traumatic incident in which the officer shot and killed a man were inadmissible in a federal civil action brought by the family of the deceased.

Thus, *Jaffee* resolved the split in the federal courts. In reaching its decision, the majority reiterated that an "uncertain privilege" was "little better than no privilege at all." *Id.* at 18, 116 S.Ct. 1923. The Court also recognized that the privilege was absolute, rejecting the balancing test applied by the Court of Appeals in the *Jaffee* case. *Id.* at 17, 116 S.Ct. 1923. The Court concluded:

> Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.

*Id.* at 18 n. 19, 116 S.Ct. 1923.

Prior to *Jaffee*, this Court did not recognize a psychotherapist privilege. *United States v. Mansfield*, 38 MJ 415 (1993); *United States v. Toledo*, 25 MJ 270 (1987). After *Jaffee* was decided, this Court stated in dicta in *United States v. English*, 47 MJ 215, 216–17 (1997):

> Although the Manual for Courts-Martial does not recognize a general doctor-patient or psychotherapist-patient privilege, there is a limited privilege under Mil.R.Evid. 302 . . . covering statements made during an

---

2. *See, e.g., United States v. Burtrum*, 17 F.3d 1299, 1302 (10th Cir.1994).

3. *See, e.g., In re Doe*, 964 F.2d 1325, 1328 (2d Cir.1992).

examination into the mental condition of the accused under RCM 706.

(Footnote omitted.)

All of the service courts that have addressed this issue post-*Jaffee* (including this case) have recognized that the President has occupied the field and that Mil.R.Evid. 501(d) precludes application of doctor-patient or psychotherapist-patient privilege to the military. *United States v. Paaluhi*, 50 MJ 782, 786 (N.M.Ct.Crim.App.1999); *United States v. Rodriguez*, 49 MJ 528 (Army Ct.Crim.App. 1998); *United States v. Stevens*, 1999 WL 453948, 1999 CCA LEXIS 198 (A.F.Ct.Crim. App.1999).

The President's use of the term, "physician," in Mil.R.Evid. 501(d) includes psychiatrists and medical officers which include a broad range of military personnel who were not physicians, including those who are psychotherapists. The psychotherapist privilege is not a privilege required by the Constitution of the United States. *See* Mil.R.Evid. 501(a)(1). Nor is it a privilege required by statute. *See* Mil.R.Evid. 501(a)(2).[4] Nor is it a privilege required by the Military Rules of Evidence or the Manual for Courts–Martial existing at the time of appellant's trial. *Cf.* Mil.R.Evid. 301–303, 502–509 (specific privileges required by the Rules and the Manual).

A psychotherapist-patient privilege would be contrary to and inconsistent with Mil. R.Evid. 501(d). As we have said, the term "physician" includes a psychiatrist.[5]

The President adopted Mil.R.Evid. 513 on October 6, 1999. Executive Order No. 13140, § 2a, 64 Fed.Reg. 55116 (1999), effective for "communications made after 1 November 1999." 64 Fed.Reg. 55120. This Rule provides in pertinent part:

Rule 513. Psychotherapist-patient privilege

(a) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the UCMJ, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

This Rule demonstrates the President's continued commitment to occupy the field by: (1) not relying on Mil.R.Evid. 501(a)(4); and (2) adopting a Rule that does not literally incorporate *Jaffee*. Instead, Mil.R.Evid. 513 applies a more limited approach to the statements of Dr. Alfano, a civilian psychiatrist/physician working for the military.

Rather than a case-by-case examination of the scope of the Rule as in the federal civilian sector, the President has set forth in detail the psychotherapist privilege for the military. This includes defining the holders of the privilege, the nature of the privilege, and the nature of privileged information. Mil. R.Evid. 513(b). Additionally, the Rule sets forth various exceptions, *e.g.*, spousal-child-abuse exception, Mil.R.Evid. 513(d)(2); danger exception, Mil.R.Evid. 513(d)(4); crime-fraud exception, Mil.R.Evid. 513(d)(5); and military-mission exception, Mil.R.Evid. 513(d)(6). The Rule also sets forth the procedures to be applied in identifying what might be privileged, what is subject to *in camera* inspection, together with various notice provisions and what constitutes waiver. Mil.R.Evid. 513(e).

Appellant argues that because the President has now established a psychotherapist privilege without changing the language of Mil.R.Evid. 501(d), the term "physicians" used in that section must not have included "psychotherapists." On the contrary, the President established Mil.R.Evid. 513 as a separate rule from Mil.R.Evid. 501(d), creating a limited psychotherapist privilege, "based on the social benefit of confidential counseling recognized by *Jaffee*." 64 Fed. Reg. 55122 (Drafters' Analysis of Mil.R.Evid. 513). The approach taken by the dissent

---

**4.** In contrast, Article 31, UCMJ, 10 USC § 831, does recognize the right to remain silent and the right not to be compelled to incriminate oneself.

**5.** Dr. Alfano was a physician. The dissent's position is inconsistent, in that it recognizes that a psychiatrist is a physician, but then later asserts that Dr. Alfano was not working as a physician while working as a psychiatrist.

would lead to the following anomaly: (1) pre-*Jaffee* cases: no privilege; (2) immediate post-*Jaffee*/pre-Mil.R.Evid. 513 cases should have the benefit of full civilian *Jaffee* privilege; and (3) post-Mil.R.Evid. 513 cases: limited military privilege.

There is no reason that the cases falling in category (2) have the benefit of an unrestricted privilege. The approach we have taken recognizes that prior to *Jaffee* there was no privilege. Post-*Jaffee* and prior to adoption of Mil.R.Evid. 513, there was still no psychotherapist-patient privilege in the military because it was contrary to Mil.R.Evid. 501(d). When the President promulgated Mil.R.Evid. 513, he did not simply adopt *Jaffee;* rather, he created a limited psychotherapist privilege for the military. In the absence of a constitutional or statutory requirement to the contrary, the decision as to whether, when, and to what degree *Jaffee* should apply in the military rests with the President, not this Court.

Therefore, we hold that the statements to Dr. Alfano, a medical doctor, were not privileged.

The decision of the United States Army Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result):

The question before us is whether appellant's June 1996 statements to Doctor Alfano (a civilian psychiatrist in government employment) were privileged and thus inadmissible at his court-martial in January of 1997. These statements were made by appellant while he was hospitalized at Landstuhl Regional Medical Center in Germany for a self-inflicted gunshot wound to his stomach which had earlier caused his transfer back from Bosnia where he was deployed. Doctor Alfano's purpose in treating appellant was to develop a disposition plan, *i.e.,* to determine whether he should be returned to duty or returned to the United States for further treatment. (R. 75) The doctor's primary focus was to determine appellant's level of "suicidality." (*id.*) The doctor testified that appellant said he was "not suicidal" but was "distressed" over his wife's "affair with an-

other soldier" and wanted to return to Germany to get his family back together. (R. 75–76)

The lead opinion affirms the judge's denial of defense counsel's motion to suppress Doctor Alfano's testimony because it was privileged under *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). It does so on the basis that Mil.R.Evid. 501(d) at the time of appellant's statements and trial affirmatively precluded a privilege for statements made to a physician, including a psychiatrist like Doctor Alfano. Our case law applying Mil.R.Evid. 501(d) clearly supports the decisions of the lead opinion, the Court of Criminal Appeals, and the military judge on this legal question. *See United States v. Mansfield,* 38 MJ 415, 418 (1993); *United States v. Tharpe,* 38 MJ 8, 15 n. 5 (1993); *United States v. Toledo,* 25 MJ 270, 275 (1987) (pre-*Jaffee* cases); *see also United States v. Flack,* 47 MJ 415, 417 (1998); *United States v. English,* 47 MJ 215, 216–17 (1997) (post-*Jaffee* cases).

The dissenters, implicitly renouncing our case law, have concluded that Mil.R.Evid. 501(d) does not preclude a psychotherapist-patient privilege. *See generally United States v. Demmings,* 46 MJ 877 (Army Ct. Crim.App.1997). Moreover, relying on Mil.R.Evid. 501(a)(4) and *Jaffee v. Redmond, supra,* they conclude that a psychiatrist-patient privilege was "generally recognized in the trial of criminal cases in the United States" at the time of appellant's court-martial. 54 MJ at 162. In addition, the dissenters rely on Mil.R.Evid. 513, promulgated by the President in October 1999, well after appellant's trial, in concluding that application of this privilege at appellant's court-martial was "[o]bviously ... 'practicable'" (54 MJ at 162–63) as required by Mil.R.Evid. 501(a)(4).

I am not persuaded by the dissenters that our prior case law (holding that Mil.R.Evid. 501(d) includes psychiatrists) should be overturned. *See United States v. Scalarone,* 54 MJ 114 (2000) (discussing and applying the doctrine of *stare decisis*). Even if I were, I am not persuaded that application of such a privilege in appellant's case is "practicable" as additionally required by Mil.R.Evid.

501(a)(4). The President, in subsequently promulgating Mil.R.Evid. 513, which recognized a military psychotherapist-patient privilege, did so on a limited basis reflecting the exigencies of military service. He specifically provided exceptions where there is no privilege under this rule. One exception to application of this privilege arises

> (4) when a psychotherapist or assistant to a psychotherapist believes that a patient's mental or emotional condition makes the patient a danger to any person, including the patient[.]

In my view, appellant's case (a suicide review) fits in this category * and thus I conclude that no privilege existed even under the dissenters' approach to this case. Accordingly, I vote to affirm.

GIERKE, Judge, with whom COX, Senior Judge, joins (dissenting):

The Supreme Court, the President, all 50 States, and the District of Columbia all agree that communications between a psychiatrist and a patient are privileged. Mil.R.Evid. 513; *Jaffee v. Redmond,* 518 U.S. 1, 12 and n. 11, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Nevertheless, because Specialist Rodriguez had the misfortune of consulting with Dr. Alfano before November 1, 1999, the effective date of Mil.R.Evid. 513, the majority denies him the benefit of the privilege. The majority hangs its hat on Mil.R.Evid. 501(d) and holds that the President has "occupied the field" by making communications with "a medical officer or civilian physician" unprivileged. I strongly disagree.

In my view, the majority's decision is contrary to the common law as well as Article 36, UCMJ, 10 USC § 836, and Mil.R.Evid. 501(a)(4), which enjoin courts-martial to follow "principles of common law generally recognized in the trial of criminal cases in United States district courts pursuant to rule 501 of the Federal Rules of Evidence," to the extent practicable. Those "principles of common law" recognize the privilege between a psychiatrist and a patient. *See Jaffe v. Redmond, supra.* Obviously, recognition of the privilege has been determined by the President to be "practicable," because he expressly made it applicable to courts-martial by promulgating Mil.R.Evid. 513.

The majority concludes that because Dr. Alfano is also a physician, Mil.R.Evid. 501(d) is dispositive. The majority overlooks the fact that appellant's disclosures to Dr. Alfano were in his capacity as a psychiatrist, not as a physician. A "psychiatrist" is defined as "[a] physician especially learned in psychiatry." 5 J.E. Schmidt, *Attorneys' Dictionary of Medicine* 514 (1999). The fact that Dr. Alfano is a physician does not remove the privilege, any more than it would remove the privilege from a communication with a lawyer or a clergyman who also happened to be a physician. The critical issue is the capacity in which the communication was received, not the curriculum vitae of the recipient.

The Supreme Court recognized in *Jaffee* that there is a fundamental difference between treatment by a physician and a psychiatrist. The Supreme Court explained how the two differ:

> Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears....

518 U.S. at 10, 116 S.Ct. 1923. When the President promulgated Mil.R.Evid. 513, he did not find it necessary to modify or further define the terms "medical officer" or "civilian physician" in Mil.R.Evid. 501(d), strongly suggesting that he did not find the language of Mil.R.Evid. 513 inconsistent with Mil. R.Evid. 501(d).

In the instant case, the review by Dr. Alfano was to determine whether to return appellant to Bosnia or to send him back to the United States for treatment.

---

\* The suicide review would equally be covered by Mil.R.Evid. 513(d)(6). It provides an exception which arises

> (6) when necessary to ensure the safety and security of military personnel, military dependents, military property, classified information, or the accomplishment of a military mission[.]

In my view, appellant's communications to Dr. Alfano do not fall under the "medical officer" or "physician" exceptions in Mil. R.Evid. 501(d). In the Army, the term "medical officer" applies only to commissioned and warrant officers of the Army Medical Department. *See generally* Army Regulation 40–1, Composition, Mission, and Functions of the Army Medical Department (1 July 1983). Because Dr. Alfano is a civilian, he is not a "medical officer." With regard to the "physician" exception, Dr. Alfano was not working as a "physician," but as a "psychiatrist." Thus, Mil.R.Evid. 501(d) is inapplicable to this case.

In my view, there is no justification in law or policy for denying appellant the protection of the common-law privilege recognized by the Supreme Court in *Jaffee*. I would hold that under Mil.R.Evid. 501(a)(4), appellant was entitled to invoke that common-law privilege. The majority denies him that right. Accordingly, I dissent.