**UNITED STATES, Appellee,**

v.

**Specialist Scott S. DAVIS, United States Army, Appellant.**

**ARMY 20010469.**

U.S. Army Court of Criminal Appeals.

5 May 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Craig A. Harbaugh, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Theresa A. Gallagher, JA; Captain Mark A. Visger, JA (on brief).

Before HARVEY, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

BARTO, Judge:

A general court-martial consisting of officer members found appellant guilty, contrary to his pleas, of knowing and wrongful possession of child pornography under discrediting circumstances in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 134 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to

a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1.

This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866. We agree with appellant that the military judge erred when he allowed appellant's wife to testify over defense objection to certain confidential communications made by appellant during their marriage. We ultimately conclude that the error was harmless, but nonetheless write to clarify our precedent concerning the boundaries of the husband-wife privilege under the provisions of Military Rule of Evidence [hereinafter Mil. R. Evid.] 504.

## FACTS

Appellant was a satellite communication systems operator-maintainer assigned to Fort Hood, Texas, and lived in nearby Killeen with his wife, Angel Davis. While under investigation for the instant offense, appellant consented to the seizure and search of his home computer system and numerous floppy disks that were found in the vicinity of the computer in his home. Special Agent (SA) Jonathan Bair, U.S. Army Criminal Investigation Command (CID), examined the hard-drives and disks that he seized from appellant's home, and discovered deleted files containing thousands of images depicting what appeared to be children engaging in sexual activity. Special Agent Bair also discovered seven undeleted images of a similar nature on a floppy disk seized from the vicinity of appellant's home computer.

The military judge allowed appellant's wife to testify, over defense objection, as to the substance of a telephone conversation she had with appellant while SA Bair was en-route to their home. During their conversation, appellant directed his wife to delete certain files from their home computer. Mrs. Davis testified that she did as requested and deleted the files from the directory in which they were located. She then emptied the recycle bin of the computer as well.[1] She denied looking at the files before deleting

---

1. Mrs. Davis asserted on cross-examination that she was testifying because the trial counsel had told her she could lose her children if she did not testify against her husband. She also denied disclosing appellant's statements to her neighbors.

them. Mrs. Davis also testified that appellant declined to answer her question as to why she was deleting the files, and told her instead to "just do it." The military judge concluded that appellant's "statements to his wife in furtherance of their criminal acts are admissible under a partnership in crime/crime-fraud exception to the marital communications privilege."

Mrs. Davis further testified, without objection by the defense, that she did not approve of appellant's use of the family computer to view adult pornography. She stated that over the course of two years, she would occasionally search the computer for such files and delete them when she found them. On cross-examination, Mrs. Davis denied that she had ever seen child pornography on the computer.

To corroborate Mrs. Davis' testimony, the prosecution called Angela Yesuvida, a neighbor of the Davis family. Ms. Yesuvida asserted that Mrs. Davis had called her one day and excitedly disclosed that she was deleting files from the family computer at appellant's request because CID was coming to seize the computer hard-drive.[2] Ms. Yesuvida also corroborated Mrs. Davis' testimony that Mrs. Davis would destroy adult pornography whenever she discovered it on the family computer. Ms. Yesuvida also claimed that Mrs. Davis would delete child pornography whenever she found it on the family computer. In addition, Mrs. Davis once gave her pictures of young women in a shower that Mrs. Davis had discovered in appellant's briefcase. On cross-examination, Ms. Yesuvida denied ever having threatened to teach appellant a lesson, but conceded that she was able to move into on-post quarters more rapidly than would otherwise have been the case as a result of reporting appellant's conduct to the authorities.

Another neighbor, Dana Garza, also testified on behalf of the prosecution at trial. Ms. Garza recounted conversations that she had with appellant and his wife while appellant was being investigated for possession of child pornography. On one occasion, appellant told Ms. Garza that "for a long time" he had a problem with looking at child pornography. On another occasion, after CID had seized appellant's computer, appellant told Ms. Garza that he would just say somebody else used the computer after she pointed out that the "deleted" files would still be on the hard-drive.

The crux of the defense case was that appellant did not knowingly possess child pornography, and he deleted any such images when he discovered them on his computer. In support of this theory, appellant relied largely upon testimony by Master Sergeant (MSG) Donald Gray, the noncommissioned officer-in-charge of automation for the 4th Infantry Division at Fort Hood. Master Sergeant Gray asserted that his examination of appellant's computer and the results of government testing indicated that appellant had downloaded many images from "newsgroups"[3] on the internet and then quickly deleted them. Master Sergeant Gray also demonstrated for the members how images could be downloaded to a computer while accessing a website without the consent of the recipient. On cross-examination, MSG Gray acknowledged that his theory of "force-fed" images did not explain the images found on a floppy disk or the large video files found

<hr/>

**2.** Trial defense counsel made a motion in limine to exclude this testimony by Ms. Yesuvida on the grounds of marital privilege and hearsay. In connection with the hearsay objection, the military judge ruled that Mrs. Davis' statements were admissible as residual hearsay if she was unavailable at trial, but apparently made no ruling as to admissibility in the event Mrs. Davis did testify. As noted, Mrs. Davis did testify at trial, but denied disclosing appellant's statements or her actions to Ms. Yesuvida by telephone. Trial defense counsel made no subsequent objection when Ms. Yesuvida recounted her conversation with Mrs. Davis under oath before the members. Under the instant facts, we decline to find that the military judge committed plain error by admitting Ms. Yesuvida's testimony concerning her telephone conversation with Mrs. Davis.

**3.** Newsgroups are "[a] collection of messages posted by individuals to a news server, a computer maintained by a company, group, or individual. Some newsgroups are monitored, but most are not, and messages can be posted and read by anyone with access to the group." Microsoft Office Online, "About newsgroups and newsreaders," *available at* http://office.microsoft.com/en-us/assistance/HP052429651033.aspx (15 March 2005).

on one of the multiple storage drives appellant had set up on his computer.

## LAW

### Standard of Review

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F.2003); *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F. 2000); *see United States v. Westmoreland*, 312 F.3d 302, 306 (7th Cir.2002) ("We review the trial court's resolution of a marital privilege issue for an abuse of discretion."). "Whether a communication is privileged is a mixed question of fact and law." *McCollum*, 58 M.J. at 335–36 (citations omitted). In such a case, "a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F.1995).

### Rules of Evidence Generally

Congress granted the President the power to prescribe rules of evidence "which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with [the UCMJ]." UCMJ art. 36(a), 10 U.S.C. § 836(a). The President, in turn, promulgated the Military Rules of Evidence, which "apply generally to all courts-martial." Mil. R. Evid. 1101(a); *see* Mil. R. Evid. 101(a). *But cf.* Mil. R. Evid. 1101(d) (noting situations in which rules are inapplicable). In sum, it is "clear that the Military Rules of Evidence are the primary source of evidentiary law for military practice." ·Mil. R. Evid. 101(b) analysis, at A22–2.

However, the rules are not the only source of evidentiary law in the military justice system. "[C]ourts-martial shall apply .... the rules of evidence generally recognized in the trial of criminal cases in the United States

district courts" unless the federal rule sought to be applied to courts-martial is "otherwise prescribed" in the *Manual for Courts–Martial* or the Military Rules of Evidence. Mil. R. Evid. 101(b). As such, the federal rule under consideration shall be applied to courts-martial only "insofar as practicable and not inconsistent with or contrary to the [UCMJ or the MCM]." *Id.*

### Rules of Privilege Generally

The Military Rules of Evidence expressly provide for nine privileges.[4] The rules also allow that there may be circumstances in which a witness may properly claim a privilege "required by or provided for in .... [t]he principles of common law generally recognized in the trial of criminal cases in the United States district courts." Mil. R. Evid. 501(a)(4). The federal rules of privilege thereby supplement the Military Rules of Evidence "insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, [the Military Rules of Evidence, or the Manual for Courts–Martial]." *Id.* However, application of the federal common-law of evidentiary privilege to courts-martial is more likely to be "contrary to or inconsistent with" military practice when the President has "occupied the field" by express enactment of a comprehensive rule of privilege. *See, e.g., United States v. Rodriguez*, 54 M.J. 156, 160–61 (C.A.A.F.2000) (declining to apply federal common-law psychotherapist privilege in light of enactment of limited psychotherapist privilege enacted in Mil. R. Evid. 513).

### Husband–Wife Privilege

█ Military Rule of Evidence 504(b) expressly recognizes a limited privilege for confidential communications made during marriage as follows: "A person has a privilege during and after the marital relationship to .... prevent another from disclosing, any confidential communication made to the spouse of the person while they were hus-

---

4. These enumerated privileges extend to certain confidential communications to attorneys, Mil. R. Evid. 502, clergy, Mil. R. Evid. 503, spouses, Mil. R. Evid. 504, and psychotherapists. Mil. R. Evid. 513. *Section V of the Military Rules of Evidence also allows the government to protect*

classified information, Mil. R. Evid. 505, other government information, Mil. R. Evid. 506, and the identity of an informant. Mil. R. Evid. 507. The privileges also expressly protect a person's political vote, Mil. R. Evid. 508, and the deliberations of courts and juries. Mil. R. Evid. 509.

band and wife and not separated as provided by law." Mil. R. Evid. 504(b)(1). The rule goes on to define a communication as " 'confidential' if made privately by any person to the spouse of the person and ... not intended to be disclosed to third persons other than those reasonably necessary for transmission of the communication." Mil. R. Evid. 504(b)(2). "The privilege may be claimed by the spouse who made the communication or by the other spouse on his or her behalf." Mil. R. Evid. 504(b)(3).

Military Rule of Evidence 504 also specifically recognizes several exceptions to the privilege concerning confidential communications made during marriage. *See* Mil. R. Evid. 504(c)(2). There is no confidential marital communications privilege in courts-martial "in which one spouse is charged with a crime against the person or property of the other spouse or a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other spouse." Mil. R. Evid. 504(c)(2)(A). Similarly, the privilege will not lie when one spouse is charged with transporting the other for immoral purposes. Mil. R. Evid. 504(c)(2)(C). A final exception also provides that there is no confidential communications privilege arising out of a relationship joined "only for the purpose of using the purported marital relationship as a sham" if "the relationship was a sham at the time of the communication." Mil. R. Evid. 504(c)(2)(B).

The privilege for confidential marital communications is also a long-standing part of the federal common-law of evidence.[5] "Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged." *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 78 L.Ed. 617 (1934). However, many federal courts have held that communications concerning crimes in which spouses are jointly participating do not fall within the protection of the marital communications privilege.[6] In a similar vein, some federal courts have also held that "the privilege will not apply if the spouse is communicating in order to further a crime or fraud." 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 743 (7th ed.1998) [hereinafter *FRE Manual*]; *see* 81 Am.Jur.2d *Witnesses* § 298 (2004). Thus, "if one spouse is using the other as a dupe in furtherance of a crime or fraud, the communications should not be protected by the privilege, even though it is questionable whether the duped spouse could be considered a joint participant in criminal activity." 2 *FRE Manual* at 743. It is important to note, however, that "a joint participant exception is not the same as a crime-fraud exception." *Id.* (citing by way of example *United States v. Hill,* 967 F.2d 902 (3d Cir.1992)). The "joint participant" exception focuses on the status of the parties at the time of the communication at issue, while the "crime-fraud" exception focuses instead upon the intent of the declarant to further crime or fraud.

**5.** Our superior court noted the following in *United States v. Tipton,* 23 M.J. 338 (C.M.A.1987), concerning federal evidentiary practice:

> The Federal Rules do not codify the privileges available in trials in the Federal District Courts. Instead, as to criminal trials, they only state that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." ... Therefore, in dealing with the marital privilege, a judge of a Federal District Court or Court of Appeals has the responsibility of examining the policies that gave rise to this privilege at common law and to determine whether "reason" or "experience" sustain invocation of the privilege in a particular case.

*Id.* at 343 (citations and footnotes omitted). Military practice differs significantly in that Section V of the Military Rules of Evidence codifies specific rules of privilege and their exceptions "to provide concrete guidance to a world-wide criminal justice system that makes wide use of lay persons in disposing of criminal charges." 2 Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* § 501.02[2] (5th ed.2003) [hereinafter *MRE Manual*].

**6.** *See, e.g., United States v. Montgomery,* 384 F.3d 1050, 1060 (9th Cir.2004) (surveying the status of the joint participants exception to marital privilege in the federal circuits); *see generally* Bruce I. McDaniel, Annotation, *Marital Privilege Under Rule 501 of Federal Rules of Evidence,* 46 A.L.R. Fed. 735, 1980 WL 130751 (2004) (updating status of exception in circuits); 81 Am.Jur.2d *Witnesses* § 298 (2004) (assembling state and federal cases).

Our court apparently recognized the joint participant exception to the marital privilege in *United States v. Martel,* 19 M.J. 917 (A.C.M.R.1985). In *Martel,* we observed that "conversations between spouses regarding crimes in which they are jointly participating do not constitute marital communications for purposes of the marital privilege, and thus are not entitled to protection as confidential marital communications." *Id.* at 928 (citations omitted). The court invoked federal precedent recognizing such an exception to the rule of marital privilege, *id.* at 926, and justified its conclusion as "[b]alancing the need for truth in criminal trials against the importance of the policy behind M.R.E. 504(b) in the light of reason and experience." *Id.* at 929; *see also United States v. Smith,* 30 M.J. 1022, 1025–27 (A.F.C.M.R.1990) (adopting crime-fraud exception to marital privilege on similar rationale), *aff'd on other grounds,* 33 M.J. 114 (C.M.A.1991).

However, a decision of our court issued subsequent to our opinion in *Martel* questioned the applicability of this federal precedent to the military law of evidentiary privileges. In *United States v. Archuleta,* 40 M.J. 505 (A.C.M.R.1994), we declined to follow *Martel* and concluded instead that "there is no basis in the provisions of Mil. R. Evid. 504(b) or its listed exceptions to limit its applicability solely to confidential communications made during a marriage that are not part of a joint venture in illegal activity." *Id.* at 507. Notwithstanding this conclusion, the *Archuleta* panel did not expressly overrule *Martel,* thereby creating substantial ambiguity as to the boundaries of the confidential marital communications privilege under military law, and giving rise to the issue under consideration in this case.

## DISCUSSION

Citing our decision in *Archuleta,* appellant asserts on appeal that military law does not recognize a "partnership in crime/fraud exception to the marital communications privilege" like that relied upon by the military judge to admit appellant's statement to his wife. Appellate government counsel rely upon *Martel* and maintain to the contrary.

We need not determine today the precise contours of the interaction between our decisions in *Martel* and *Archuleta* because the statements at issue in this matter are privileged even if we assume that *Martel* properly adopted a joint participant exception to marital privilege under military law.

The military judge made essential findings in support of his decision to admit appellant's statement to his wife. The findings of fact listed below are not clearly erroneous, and we adopt them as our own:

> Prior to 15 August 2000, Angel Davis knew that her husband was downloading child pornography on the family computer; she had previously deleted child pornography files from it. On 15 August 2000, when the accused agreed to a consent search of his home computer by Agent Bair, the accused knew there was child pornography on his computer and he had to get rid of it quickly before Bair retrieved it. When the accused called his wife on the cell phone on his way over to the house and told her to immediately delete a specific directory, she knew what he was asking her to do, destroy the evidence before it was discovered. The fact that she called her next door neighbor while she was in the middle of deleting the files and bragged that CID won't find anything supports this contention.

We also agree with the military judge that "both spouses were knowing participants in criminal activity" at the point when Angel Davis began deleting files at her husband's request.

However, the finding that "the communications [at issue] were made in furtherance of a joint criminal venture" was "clearly erroneous." The military judge made no specific finding on the critical question as to *when* the "joint criminal venture" began, and we find that Angel Davis was not "jointly participating" in criminal activity with appellant at the time when he asked her to delete certain files from their computer. Appellant told his wife to delete certain files from the family computer in furtherance of his effort to obstruct justice and prevent the seizure of the files by law enforcement. In other words, appellant made this statement in pur-

suit of a joint criminal venture, but not as part of an ongoing one. *See United States v. Martel*, 19 M.J. 917, 925 (A.C.M.R.1985) (observing that each stage of criminal activity must be evaluated in light of applicable law of privilege). The only other criminal activity taking place, in addition to appellant's solicitation, was his ongoing possession of child pornography. Rather than establishing that Angel Davis was participating in this activity, the uncontroverted evidence established that she had deleted or destroyed pornography when she found it on the family computer or in appellant's possession.

"The majority of [federal] circuits agree that communications made *before* a spouse begins to participate in the criminal activity are privileged." *Weinstein's Federal Evidence* § 505.11[2][c] (2005) (emphasis added); *see, e.g., United States v. Montgomery*, 384 F.3d 1050, 1060 (9th Cir.2004) (citing federal cases in support of this proposition). *But cf. Smith*, 30 M.J. at 1027 (holding solicitation to obstruct justice not privileged). Similarly, the joint participant exception announced in *Martel* focuses not on the intent of the declarant, but rather on *the status of the parties at the time of the statement*. *See* 19 M.J. at 928.[7] Appellant's culpable intent may be sufficient to remove the statements from the protection of the marital privilege in those

jurisdictions recognizing the crime-fraud exception to marital privilege. *See 2 FRE Manual* at 743; 81 *Am.Jur.2d Witnesses* § 298. However, we decline to extend *Martel* to include a crime-fraud exception to marital privilege.[8]

Congress has empowered the President to prescribe military rules of evidence. UCMJ art. 36(a). Pursuant to this authority, the President has prescribed a rule of spousal privilege and its exceptions under military law in Military Rule of Evidence 504. "If a military rule promulgated by the President treats of an issue, recourse to Federal law—even though the rule may be similar—is not necessary, and, in fact, is not permitted." *United States v. McConnell*, 20 M.J. 577, 583 (N.M.C.M.R.1985) (Barr, J., concurring). In the absence of a constitutional, statutory, or regulatory requirement to the contrary, the decision as to whether, when, and to what degree a "crime-fraud" exception should apply to the marital privilege in the military rests primarily with the President, not this court.[9] The President has provided for such an exception in connection with the lawyer-client privilege in Mil. R. Evid. 502(d)(1) and the psychotherapist-patient privilege in Mil. R. Evid. 513(d)(5), but has not done so in connection with the marital privilege in Mil. R. Evid. 504(b).[10] We therefore hold that

---

**7.** Federal courts narrowly construe the marital privilege, *see, e.g., United States v. Marashi*, 913 F.2d 724, 730 (9th Cir.1990), but they likewise narrow application of the joint participant exception to the marital privilege. *E.g., United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.1985) (limiting exception to communications involving "patently illegal activity"). A narrow construction of the exception is especially appropriate in trials by courts-martial. The military justice system requires greater evidentiary stability than civilian law because of our "dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to worldwide deployment of military personnel." Mil. R. Evid. 501 analysis at A22–38; *see also Rodriguez*, 54 M.J. at 158 (citing with approval drafter's analysis of Mil. R. Evid. 501). "Commanders, convening authorities, non-lawyer investigating officers, summary court-martial officers, or law enforcement personnel need specific guidance as to what material is privileged and what is not." *Id.* Such an approach is further justified by the absence of any single authoritative formulation of a particular federal privilege or its exceptions. Different circuits may outline the boundaries of each privilege in

varying ways, and the case-by-case adjudication of the applicability of privilege in federal practice is conducted "in the light of reason and experience." Federal Rule of Evidence 501. This dynamic ambiguity surrounding the federal law of evidentiary privilege is far removed from the certainty sought by the drafters of the Military Rules of Evidence, *see United States v. Tipton*, 23 M.J. 338, 342–43 (C.M.A.1987), and undoubtedly contributed to the instant controversy.

**8.** In its opinion in *Smith*, our brethren on the Air Force court relied upon *Martel* when it held that solicitation to obstruct justice was removed from the ambit of marital privilege by the joint participant exception. *See* 30 M.J. at 1025–27. For the reasons noted, we respectfully submit that such reliance is misplaced.

**9.** *See Rodriguez*, 54 M.J. at 161; *Archuleta*, 40 M.J. at 507 (citing *Smith*, 33 M.J. at 119–20 (C.M.A.1991) (Everett, S.J., concurring in part)); *see* Mil. R. Evid. 101(b) & 501(a).

**10.** We note that the President did not include *any* privilege for confidential communications

the military judge erred when he allowed appellant's wife to testify that appellant told her to delete certain files on their computer.[11] *See* Mil. R. Evid. 501(a)(4).

■ We must now determine whether the military judge's error had "a substantial influence on the findings." *McCollum*, 58 M.J. at 342–343. "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985)). Applying this standard to appellant's case, we hold that the error under consideration was harmless.

■ The government's case was very strong. The computer hard-drives and floppy disks seized with appellant's consent from his home contained thousands of images of child pornography, thus supporting the government's theory that appellant wrongfully possessed child pornography under discrediting circumstances. The defense case was, by contrast, very weak. The crux of the defense was that these images had been unknowingly downloaded to appellant's computer and deleted upon discovery. The possibility of such innocent possession was severely undercut by the fact that images were found in a number of different drives and folders, including seven images that were found on a floppy disk that had to have been manually saved to that location.

The statement in question was somewhat important in that it showed appellant's consciousness of guilt by his verbal act of soliciting the destruction of inculpatory evidence. The quality of the evidence at issue, however, was not very significant because Mrs. Davis had also repeated the statement to Mrs. Yesuvida in an unprivileged setting, rendering the statement at issue largely cumulative.[12] Moreover, appellant's wife could still have properly testified to her discovery of pornography on the computer, the fact and time of receiving a phone call from appellant, and her subsequent deletion of files. In light of our analysis of these factors, we are satisfied that the admission of appellant's statement to his wife did not have a substantial effect on the findings.

We have considered the other assignments of error and the matters personally submit-

between spouses in the draft Federal Rules of Evidence that he originally transmitted to the Congress, *see* 3 *FRE Manual* at 2134–35, but included such a privilege in the Military Rules of Evidence that he promulgated several years later. *See* Mil. R. Evid. 504(b).

11. Reliance upon federal common-law exceptions to the evidentiary privileges expressly promulgated by the President should be minimized. Our reasoning should not, however, be interpreted as foreclosing the use of federal common law privileges in trials by courts-martial. The basic rule remains unchanged: a witness at court-martial may invoke a privilege recognized by the Constitution, federal statutes applicable to trials by courts-martial, the Military Rules of Evidence, the *Manual for Court–Martial*, or federal common law. *See* Mil. R. Evid. 501(a). Our analysis is primarily limited to those circumstances in which counsel attempt to use the federal common law as a "sword" against the "shield" of privilege specifically provided to a witness by the President in the Military Rules of Evidence. As noted in a leading treatise on military evidentiary law, "[a] good argument can be made, however, that under military due process standards, where

military courts have a choice, the more protective rule (in this case the broader privilege under 504 that includes no such [crime-fraud] exception) should be applied." 2 *MRE Manual* § 504.02[3] at 5–45. We commend this position to *military justice practitioners when confronted* with similar evidentiary situations in future cases. That being said, we also suggest to the Joint Service Committee on Military Justice that Rule 504(c) "may be a good candidate for revision to reflect the Federal Rule." *Id.* Such a revised rule would provide that there is no marital privilege under Mil. R. Evid. 504(b) if an otherwise confidential communication was made with the intent to further a crime or fraud.

12. Ordinarily, a person waives a privilege if the person "voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege." Mil. R. Evid. 510(a). *But cf.* Mil. R. Evid. 511(a) ("Evidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if disclosure ... was made without an opportunity for the holder of the privilege to claim the privilege.").

ted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.[13]

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge HARVEY and Judge SCHENCK concur.

13. In connection with our conclusions concerning appellant's assertions of evidentiary insufficiency and instructional error, see *United States v. Mason*, 60 M.J. 15 (C.A.A.F.2004), *United States v. Augustine*, 53 M.J. 95 (C.A.A.F.2000), and *United States v. Sapp*, 53 M.J. 90 (C.A.A.F. 2000). "The receipt or possession of 'virtual' child pornography can, like 'actual' child pornography, be service-discrediting or prejudicial to good order and discipline." *Mason*, 60 M.J. at 20.