UNITED STATES, Appellee

v.

Michael P. JENKINS, Airman First Class
U.S. Air Force, Appellant

No. 06-0027

Crim. App. No. 35699

United States Court of Appeals for the Armed Forces

Argued May 2, 2006

Decided August 9, 2006

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Captain John S. Fredland (argued); Lieutenant
Colonel Mark R. Strickland (on brief).

For Appellee:  Captain Kimani R. Eason (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer, and
Captain Jefferson E. McBride (on brief).

Military Judge:  Daryl E. Trawick


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**

United States v. Jenkins, No. 06-0027/AF

Judge BAKER delivered the opinion of the Court.

Appellant was an Airman First Class assigned to Charleston Air Force Base, South Carolina. Before a general court-martial composed of a military judge sitting alone, Appellant pleaded guilty to two specifications of wrongful use of cocaine on divers occasions, one specification of wrongful use of marijuana, one specification of assault with a deadly weapon, one specification of disorderly conduct, and two specifications of communicating a threat, in violation of Articles 112a, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 928, 934 (2000). The military judge sentenced Appellant to thirty months of confinement, reduction to E-1, forfeiture of all pay and allowances, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority disapproved all confinement in excess of eighteen months and waived automatic forfeitures. The United States Air Force Court of Criminal Appeals affirmed. United States v. Jenkins, No. ACM 35699, 2005 CCA LEXIS 275, at *9, 2005 WL 2130216, at *3-*4 (A.F. Ct. Crim. App. Aug. 16, 2005) (unpublished). Upon Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN ADMITTING APPELLANT'S CONFIDENTIAL COMMUNICATIONS WITH A PSYCHOLOGIST DURING A COMMANDER-DIRECTED MENTAL HEALTH EVALUATION.

2

We conclude that Appellant's communications fell within exceptions (4) and (6) to the psychotherapist-patient privilege under Military Rule of Evidence (M.R.E.) 513(d), and we affirm the decision of the Air Force Court of Criminal Appeals.

BACKGROUND

At the time of his offenses, Appellant worked on the wash and wax detail at the Charleston Air Force Base Vehicle Operations. Appellant had previously been assigned to pickup and delivery, but was reassigned after an investigation into his illegal drug use. On January 10, 2003, Appellant provided a signed and sworn statement admitting that he purchased and used cocaine approximately sixty times while attending technical school at Fort Leonard Wood, Missouri, and used cocaine upwards of sixty times since his arrival at Charleston Air Force Base. On April 7, 2003, Appellant tested positive for cocaine use during a random unit urinalysis inspection.

On the night of May 7, 2003, Appellant was drinking with friends while outside of his dorm. Airman Brandon M. Times walked by en route to his car and was confronted with racist remarks from Appellant's friends. After being approached in a hostile manner by Appellant and four of his cohorts, Airman Times quickly drove away but soon returned to the scene with three of his own friends in search of "[s]ome kind of resolution."

Airman Times and his friends approached the group and were confronted by Appellant who, while brandishing a fourteen-inch-long knife, stated: "Y'all n****** are f****** with a crazy white boy tonight.  I'm going to kill y'all n****** tonight," or words to that effect.  Upon seeing the knife, Airman Times and his friends immediately fled the scene by foot.  Appellant chased in hot pursuit, coming within feet of his target until Airman Times eventually escaped into the chow hall, therein finding safety and the assistance of Security Forces personnel who happened to be dining at the time.  Security Forces personnel apprehended Appellant outside the chow hall.

Appellant was released by Security Forces the following morning on May 8, 2003, and instructed to walk home by Master Sergeant (MSgt) Janet Osborne.  At approximately 7:15 a.m., Appellant arrived at work.  He described the events of the previous evening to his supervisors and coworkers, and speaking of MSgt Osborne, he stated, "That f****** bitch made me mad. She f****** made me walk home, and I was f****** drunk.  If I had a f****** knife at that time, I would have cut her f****** throat," or words to that effect.

Appellant's behavior was reported up the chain of command, and on May 9, 2003, he was sent for a command-directed mental health examination with Lieutenant Colonel Frank Budd, a clinical psychologist.  The examination lasted about one hour

4

and consisted of a clinical interview, a description of Appellant's mental health history, and various psychological tests. Dr. Budd drafted a mental health evaluation following the examination.

At Appellant's court-martial, the Government gave notice that it intended to call Dr. Budd to testify on sentencing and that it would offer Appellant's mental health evaluation into evidence. Appellant objected to Dr. Budd's expected testimony and to admission of the evaluation, arguing that the probative value of the evidence was outweighed by its prejudicial impact, and also that his communications to Dr. Budd were confidential and protected by the psychotherapist-patient privilege under M.R.E. 513(a).

The military judge overruled the defense objections and held that the evidence was admissible under M.R.E. 513(d)(4) and (6) for consideration on sentencing. Trial counsel subsequently introduced the mental health evaluation, and Dr. Budd testified to his observations of Appellant during the mental health examination.

Dr. Budd testified that Appellant "acts with very poor impulse control." He also testified that Appellant scored extremely high on the anger inventory, "higher than [Dr. Budd had] ever seen," but "low and below the cutoff for the average individual" on the self-control inventory. He stated that

5

Appellant was "extremely impulsive, angry, likely to think angry things, likely to do angry things, and his ability to control his own emotions, his own reactions is extremely low . . . if he thinks it, he will do it."

Dr. Budd's written mental health evaluation noted Appellant's involvement in nine to ten fights in high school and his arrest since joining the Air Force for fighting while on leave. The evaluation ultimately recommended that Appellant, "be ordered into confinement pending the outcome of his Courts Martial [sic] due to his dangerousness to others. His condition is not amenable to treatment in the military setting." Dr. Budd also recommended that Appellant receive extensive medical and psychiatric treatment.

Appellant now renews his argument that the military judge abused his discretion in admitting Dr. Budd's testimony and the mental health evaluation on sentencing. He contends that his communications to Dr. Budd were made to facilitate treatment or diagnosis of his mental condition and were therefore protected under the psychotherapist-patient privilege.

DISCUSSION

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. United States v. Manns, 54 M.J. 164, 166 (C.A.A.F. 2000).

M.R.E. 513(a) sets forth the general rule of the psychotherapist-patient privilege:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the UCMJ, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

M.R.E. 513(b)(4) defines a "confidential communication" as one "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional services to the patient or those reasonably necessary for such transmission of the communication."

M.R.E. 513(d) establishes eight specific exceptions to the general psychotherapist-patient privilege, two of which are implicated in this case. M.R.E. 513(d)(4) states there is no privilege when a psychotherapist "believes that a patient's mental or emotional condition makes the patient a danger to any person, including the patient." M.R.E.(d)(6) further provides there is no privilege "when necessary to ensure the safety and security of military personnel, military dependents, military property, classified information, or the accomplishment of a military mission."

Confidentiality

The Government contends that Appellant's communications to Dr. Budd were not protected by the psychotherapist-patient privilege because the communications were not confidential. It argues Appellant was ordered to undergo a mental evaluation by his commander, and the purpose of the evaluation was not to facilitate treatment, but to decide pretrial confinement matters and whether Appellant was a danger to himself or to others. In the alternative, the Government suggests that because Appellant knew that his commander, a third party, intended to review the evaluation, Appellant could not reasonably expect Dr. Budd to treat the communications as confidential.

Air Force Instruction 44-109 "establishes rules for confidentiality" and "defines conditions requiring communication between mental health providers and commanders." Dep't of the Air Force, Instr. 44-109, Mental Health, Confidentiality, and Military Law (Mar. 1, 2000) [hereinafter AFI 44-109].[1] AFI 44-

---

[1] AFI 44-109 para. 2.1 states that:

> [c]ommunications between a patient and a psychotherapist . . . made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition are confidential communications and shall be protected from unauthorized disclosure. However, confidential communications will be disclosed to persons or agencies with a proper and legitimate need for the information and who are authorized by law or

109 suggests that communications to a therapist retain their confidential character, even though the communications may be disclosed to a third party, including a commander, if the commander has a legitimate need for the information and is authorized by law or regulation to receive the communications. Attachment 2 to AFI 44-109 is a "Mental Health Clinic Client Information Sheet," described as a consent form in the regulation, which is provided to patients prior to receiving treatment. It informs a patient that "[y]our provider will treat you as a responsible individual and will expect you take an active part in your treatment. . . . Generally, information discussed during the evaluation and treatment sessions is confidential . . . ." The document discusses only "treatment," and does not distinguish between evaluations to decide pretrial confinement matters and evaluations to facilitate treatment. The form also states the following:

> Commanders may obtain access to the records of their members to ensure fitness for duty or a client's record when the contents of mental health records are essential to the accomplishment of a military mission. . . . Providers must take steps to protect individuals from harm when the client presents a serious threat to the life or safety of self or others.

The form does not indicate what effect, if any, disclosure for these purposes has on the confidentiality of communications for

---

> regulation to receive it, unless the evidentiary privilege . . . applies.

other purposes.  On Appellant's mental health evaluation, Dr. Budd wrote that he followed procedures outlined in AFI 44-109 when conducting the evaluation.  Under these procedures, Appellant should have received a copy of the consent form or a modified version prior to initiating his mental health evaluation.  However, the record does not indicate whether or not he did, and thus we do no know what in fact Appellant was advised of regarding the confidentiality of his communications.

In this context, we need not ultimately determine the meaning of AFI 44-109 in order to address the Government's argument that Appellant's statements were not confidential. Given Dr. Budd's statement that he followed the regulation, the language of the regulation suggesting confidentiality of communications beyond the commander, as well as the absence of evidence in the record that Appellant was informed his communications would not be kept private, we will assume without deciding that Appellant's communications were confidential.

### Exceptions to the Psychotherapist-Patient Privilege

We now turn to the issue of whether Appellant's statements to Dr. Budd fell within exceptions to the psychotherapist-patient privilege under M.R.E. 513(d)(4) and (6) and could properly be considered on sentencing.

Appellant provides what is essentially a public policy rationale for why his statements fall within the general

privilege under M.R.E. 513(a) and not within the exceptions to the privilege.  Quoting to Jaffee v. Redmond, 518 U.S. 1, 10-12 (1996), Appellant argues that "effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears."  He contends that if the privilege is rejected here and his statements to Dr. Budd can be used as evidence against him, he will be punished for his candor, and other servicemembers facing similar circumstances in the future will not be forthright when communicating with mental health providers.

Appellant also argues that the exceptions to the privilege outlined in M.R.E. 513(d)(4) and (6) are ambiguous and that it is unclear how severe his conduct must be before he is considered a danger to "any person" or himself, or is seen to compromise the "accomplishment of a military mission."  He asserts that a wide range of conduct could fall within the ambiguous contours of the exceptions, and the Government must resolve ambiguities by narrowly interpreting them.  He characterizes any assertion that he is prone to violence as mere speculation, and he describes his conduct as falling outside the exceptions.

In Jaffee the Supreme Court noted that society should encourage an individual to seek assistance from a

11

psychotherapist.  518 U.S. at 10-12; see also United States v. Rodriguez, 54 M.J. 156, 159 (C.A.A.F. 2000).  Appellant may be correct that if statements made to a therapist can be admitted at a court-martial under one of the exceptions to the privilege outlined in M.R.E. 513(d), some servicemembers, knowing their statements may one day be used against them, may refrain from making frank disclosures during treatment.  However, while M.R.E. 513 is based on Jaffee, the President, in promulgating M.R.E. 513, intended to adopt a rule that did not literally incorporate Jaffee, but instead "applies a more limited approach" to the psychotherapist-patient privilege.  Rodriguez, 54 M.J. at 160.  The exceptions were drafted to limit the privilege in order to balance the public policy goals stated in Jaffee with "the specialized society of the military and separate concerns that must be met to ensure military readiness and national security."  Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-44 (2005 ed.).

Appellant also asserts that the exceptions to the privilege are ambiguous and that their application to him is therefore unfair.  In particular, Appellant argues that the language removing the privilege when the patient is a danger to "any person," or when "necessary to ensure the safety and security of military personnel . . . or the accomplishment of a military

12

mission," is so broad that a reasonable servicemember would not know what is or is not covered under the exceptions.  Certainly, the M.R.E. text does not indicate each context in which the exceptions might apply.  Whether the exceptions apply is necessarily a fact-specific determination for a military judge to consider with an accurate awareness of the facts underlying the dispute, just as hearsay determinations necessarily involve context.  It is for this reason that the M.R.E. forego detailed analyses of their application in different factual scenarios, and it is for this same reason that a military judge's evidentiary determinations are reviewed for an abuse of discretion.  In our view, M.R.E. 513(d)(4) and (6) provide adequate and fair notice, informed by case law, as to their potential applicability.

In this case, the military judge determined that Appellant's mental state posed a risk to the safety of others or himself or to the accomplishment of a military mission, and his decision that Appellant's statements were not protected by the privilege and were admissible on sentencing was not an abuse of discretion.  Dr. Budd, a clinical psychologist with seventeen years of experience, wrote in his evaluation that Appellant's mental health posed a danger to others.  Appellant's actions and his statements to Dr. Budd during treatment substantiated those findings.  Appellant told Dr. Budd that he was arrested once for

fighting while on leave.  Two days before meeting with Dr. Budd, Appellant chased three airmen with a fourteen inch knife while shouting racist slurs.  The following day, Appellant reiterated those threats, telling a friend that "If that guy from last night came around again, I would f****** kill him."  Appellant also communicated at that time that he would have cut the throat of his master sergeant the previous night if he had possessed a knife.

Appellant told Dr. Budd that he had received four letters of reprimand for alcohol use and that he continued to drink heavily several times a week.  Dr. Budd was also informed that Appellant was under investigation for illegal drug use.  In addition, Appellant reported feelings of constant and chronic hostility, and indicated he felt an inability to control his anger.  Dr. Budd conducted personality testing that confirmed Appellant experienced intense anger and was likely to act upon his impulses.  Although we may not at this point be able to determine every context in which M.R.E. 513(d)(4) and (6) might apply, we conclude with confidence that the two exceptions were implicated when Appellant made threats to kill persons while brandishing a fourteen-inch knife.

Based on this information, the military judge properly applied M.R.E. 513(d)(4) and (6) to Appellant's communications, and he therefore did not abuse his discretion.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.