# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

───────────────────

**No. 201700090**

───────────────────

**UNITED STATES OF AMERICA**
Appellee

v.

**ARNOLD P. MARTINEZ**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

───────────────────

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Matt J. Kent, USMC.
Convening Authority: Commanding General, 1st Marine Division
(REIN), Camp Pendleton, CA.
Staff Judge Advocate's Recommendation: Lieutenant Colonel
Matthew J. Stewart, USMC.
For Appellant: Commander Richard E.N. Federico, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant George R. Lewis, JAGC, USN.

───────────────────

Decided 12 September 2017

───────────────────

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

───────────────────

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

───────────────────

SAYEGH, Judge:

At a general court-martial, a military judge convicted the appellant, pursuant to his pleas, of willful dereliction of duty, and aggravated assault in violation of Articles 92 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 928. The military judge sentenced the appellant to 15 months' confinement, reduction to pay grade E-1, total forfeiture of pay and

allowances, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged. In accordance with the pretrial agreement, the CA suspended confinement in excess of 12 months and, except for that part of the sentence extending to the dishonorable discharge, ordered the sentence executed.

The appellant raises two assignments of error: (1) ineffective assistance of counsel (IAC) in that the trial defense counsel (TDC) failed to object on proper grounds or move to suppress statements offered by the government in presentencing that were obtained in violation of the appellant's rights against self-incrimination; and (2) the military judge abused his discretion by admitting sentencing matters without applying the appropriate legal framework.

After careful consideration of the record of trial and the pleadings of the parties, we conclude the findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The parties stipulated that while deployed to Kuwait, the appellant entered his barracks room with his M4 rifle. The rifle had a magazine with live rounds inserted, but no round had been chambered and the rifle was on safe. The appellant's two roommates—Lance Corporal (LCpl) MN and LCpl JM—were in the room. In response to LCpl MN asking him how his day was going, the appellant immediately chambered a round in his rifle, put the selector on "semi," pointed it at LCpl MN and stated, "I will blow your head off."[1] Both Marines instructed the appellant to put his weapon on "safe." After a period of time, the appellant handed his rifle to LCpl JM who unloaded the weapon.

The following day, the appellant was the subject of a command-directed mental health evaluation. The results of this evaluation were reduced to writing in a memorandum subject-titled "STATEMENT FOR INVESTIGATION." The military judge admitted this memorandum as Prosecution Exhibit (PE) 2. The memorandum stated that the command directed the mental health evaluation because the appellant had twice pointed his loaded rifle at members of his platoon and had, on one occasion, handed his loaded pistol to a fellow Marine directing that Marine to shoot him. PE 2 states that during the evaluation the appellant admitted to the treating physician that he had thoughts of killing another Marine in his

---

[1] Prosecution Exhibit (PE) 1 at 3.

unit,[2] would sometimes calculate how many magazines he would need to "take out" 40 people in the room, and that he would try to shoot the officers and noncommissioned officers first.[3] The appellant was assessed as having "homicidal ideations with a degree of suicidality and that he was a threat to his platoon . . . and himself."[4] The appellant was escorted to the mental health evaluation by members of his command and was not read his Article 31(b), UCMJ, rights prior to the evaluation.

The appellant and the government entered into a pretrial agreement requiring both parties to waive any objections to statements offered during the presentencing phase of the trial in aggravation, to include written, audio, or videotaped statements or telephonic testimony of any victim or relevant witness, on the basis of foundation, hearsay, lack of confrontation, or authenticity.[5]

During presentencing, the government offered PE 2. The TDC objected on the basis that PE 2 contained uncharged misconduct. Specifically, the TDC argued that PE 2 contained admissions by the appellant that were completely unrelated to the stipulation of fact or the charges to which the appellant had pleaded guilty—to include threats against other Marines and a plan, conspiracy, or attempt to kill 40 other people. The government rebutted the TDC's objection by arguing that PE 2 was relevant under the invited response doctrine because, during the providence inquiry, the appellant had suggested that his actions were based on suicidal ideations focusing on a suicide-by-cop situation.[6] In overruling the objection, the military judge performed a "relevancy analysis" finding PE 2 "directly relates to offenses to which the accused has been found guilty[.]"[7] The military judge did agree to not consider the reference to two instances in which the appellant had pointed his loaded rifle at members of his platoon, since the appellant had only been found guilty of one instance.

During presentencing, the government also offered PE 5—"Summary of Interview with LCpl NL[.]" PE 5 indicates that the appellant made statements prior to the deployment that he wanted to stab LCpl NL and another Marine while they slept. In PE 5, LCpl NL stated that he thought

---

[2] The Marine the appellant had thoughts of killing was not either of the Marines he pointed his loaded weapon at. *See* Record at 33.

[3] PE 2

[4] *Id.*

[5] Appellate Exhibit I at 4.

[6] Record at 31.

[7] *Id.*

the appellant was "joking around." The TDC objected to PE 5 on relevancy grounds, noting that the appellant was not charged with any of the allegations contained in PE 5, and that PE 5 did not relate to, or result from, the charges to which the appellant pleaded guilty. In overruling the objection, the military judge noted that PE 5 included admissions by the appellant that he had homicidal thoughts towards other Marines, and that while those Marines are not named in either specification to which appellant pleaded guilty, PE 5, "directly related to his offense[.]"[8]

## II. DISCUSSION

### A. Ineffective assistance of counsel

During presentencing, the court admitted, over a defense relevancy objection, PE 2, which contains unwarned statements of the appellant. The appellant now asserts that the TDC's failure to move to suppress these statements, on the grounds that they were obtained in violation of the appellant's rights against self-incrimination, was IAC. We disagree.

An appellate court reviews ineffective assistance of counsel claims *de novo*.

The Supreme Court has set a high bar on a claim of IAC. *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015). *Strickland v. Washington*, 466 U.S. 668 (1984), requires the appellant to show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the counsel's deficient performance gives rise to a "reasonable probability" that the result of the proceeding would have been different without counsel's unprofessional errors. *Id.* at 688, 694. The appellant must show that his counsel's performance was so deficient that they were not functioning as the counsel guaranteed by the Sixth Amendment. *Denedo v. United States*, 66 M.J. 114, 127 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009). "It is not enough to show that the errors had some conceivable effect on the outcome[.]" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citations and internal quotation marks omitted).

When evaluating a claim of IAC, the performance of the TDC must be assessed considering all the circumstances, but there are no set rules that cover the spectrum of decisions a TDC must make in any given case—to be unreasonable, the TDC's performance must be prejudicial. *Strickland*, 466 U.S. at 694, 696.

"'[W]hen a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have

---

[8] *Id.* at 33.

been meritorious.'" *United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)). In this regard, the term "meritorious" is synonymous with "successful." *Id.* at 164. "To determine whether there is a reasonable probability that suppression motions would have been successful, it is necessary to consider the merits of the Article 31(b) issue." *United States v. Spurling*, No. 201400124, 2015 CCA LEXIS 311, at *10 (N-M. Ct. Crim. App. 31 Jul 2015). Here, the appellant alleges that a defense motion to suppress PE 2—on grounds that the appellant's statements were obtained in violation of the right against self-incrimination—would have been successful.

Article 31(b), UCMJ, provides:

> No person subject to this chapter may interrogate, or request any statement from . . . a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used against him in a trial by court-martial.

However, Article 31(b), UCMJ, warnings are required only when, in addition to being suspected of an offense, the questioner is acting in an official capacity related to law enforcement or a disciplinary investigation. *United States v. Loukas*, 29 M.J. 385, 387 (C.M.A. 1990). Whether a questioner could reasonably be considered to be acting in a law enforcement or disciplinary capacity is determined by considering all the facts and circumstances at the time of the interview. *United States v. Cohen*, 63 M.J. 45, 50 (C.A.A.F. 2006).

The appellant was a person suspected of an offense when his command escorted him to the command-directed mental health evaluation. At no time during the evaluation was the appellant read, or otherwise afforded his rights under Article 31(b), UCMJ. However, the appellant was not questioned by anyone in his chain of command, but by a treating physician who was conducting a medical evaluation. The appellant asserts, however, that the treating physician's questions had a "secondary purpose" of "gather[ing] incriminating evidence . . ." against the appellant.[9] The appellant argues that PE 2's inclusion of findings regarding possible hallucinations, intoxication, or medical disorders is indicative of the treating physician going beyond the scope of a mental health evaluation by inquiring into a potential lack of mental responsibility for the charged misconduct. Additionally, the appellant argues the secondary purpose of the questions asked during the mental

---

[9] Appellant's Brief of 25 May 2017 at 15.

health exam can be derived from the physician's failure to use the standard form for a mental health exam or cite the purpose or authority for the exam.

"A medical doctor who questions an individual solely to obtain information upon which to predicate a diagnosis, so that he can prescribe appropriate medical treatment or care for the individual, is not performing an investigative or disciplinary function; neither is he engaged in perfecting a criminal case against the individual. His questioning of the accused is not, therefore, within the reach of Article 31." *United States v. Fisher,* 44 C.M.R. 277, 279 (C.M.A. 1972). This court applied *Fisher* in *United States v. Dudley,* 42 M.J. 528 (N-M. Ct. Crim. App. 1995). In *Dudley*, we affirmed a military judge's decision to admit incriminating, unwarned statements made to a treating physician, after Dudley was brought to the medical provider by a Naval Criminal Investigative Service (NCIS) agent. *Id.* at 531. We held that, despite the fact that the treating physician was an active duty officer, was aware of the accused's status as a suspect, and was personal friends with the NCIS agent, the provider's examination "was conducted solely for diagnostic and psychiatric care purposes" and that the treating physician "was not acting as the *alter ego* of the NCIS." *Id.* (emphasis in original).

Similar to *Dudley*, there is nothing in the record here to suggest the mental health examination merged with the disciplinary investigation; nor is there any evidence to persuade us that the questioning of the appellant was for any other purpose than his psychiatric care. On 2 July 2016, the appellant pointed a loaded weapon at LCpl MN and threatened to shoot him in the head. On 3 July 2016, the appellant was taken for a mental health exam, during which the appellant made both homicidal and suicidal statements to the treating physician. PE 2 was created three days after the appellant made these statements to his treating physician. We are unable to determine from the record the original basis for why PE 2 was created or if any other record of the examination was made during or immediately after the appellant's mental health exam. But this does not support any inference that the treating physician asked any questions, or otherwise coordinated or altered the normal mental health evaluation procedures, in support of law enforcement or the command's disciplinary investigation. At the time the appellant was escorted to the aid station for his mental health evaluation, the command had detailed statements from the victims that established the appellant's misconduct. There would be no need for the command or law enforcement to conduct prior coordination with the treating physician to advise or guide him on getting additional information from the appellant.[10]

---

[10] We find no merit in the appellant's argument that the appellant's First Sergeant's use of the command directed mental health exam was to obtain evidence

Rather, the command directed mental health exam was based on a genuine concern for the mental health of the appellant. Consequently, we find no evidence of a "secondary purpose" behind the treating physician's questioning of the appellant.

Therefore, the TDC's decision not to object to PE 2 on the grounds it violated the appellant's rights under Article 31(b), UCMJ, was not unreasonable. Moreover, the appellant has not established a reasonable probability that such a motion would have been meritorious. Having failed both prongs of *Strickland*, we conclude that the appellant's IAC claim is without merit.[11]

## B. Admitting sentencing evidence

The appellant next asserts that the military judge abused his discretion by admitting PE 2 and PE 5 during presentencing without applying the appropriate legal framework for aggravation evidence.

"We test a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion." *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). It is an abuse of discretion for a military judge to fail to properly follow the appropriate legal framework for considering evidence. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010). RULE FOR COURTS-MARTIAL (R.C.M.) 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) provides that a trial counsel may present evidence as to any aggravating circumstance directly relating to or resulting from the offenses of which the accused has been found guilty. "Evidence qualifying for admission under [R.C.M.] 1001(b)(4) must also pass the test of [MIL. R. EVID. 403]." *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (citation omitted).

---

regarding the appellant's motives for his actions. Appellant's Reply Brief of 25 Aug 2017 at 6.

[11] Although not raised by the appellant, we also considered whether it was ineffective for the TDC to not object to PE 2 under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 513, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). First, there is nothing in the record to indicate that the treating medical provider was, in fact, a psychotherapist as defined by MIL. R. EVID 513(b)(2), but we find under the facts of this case that it would have been reasonable for the appellant to believe the medical provider had similar credentials. Regardless, in a case factually similar to this one, the Court of Appeals for the Armed Forces held that the military judge did not abuse his discretion when he determined the appellant's statements to a psychologist during command directed treatment were not protected by the psychotherapist-patient privilege and were admissible in sentencing. *See United States v. Jenkins*, 63 M.J. 426 (C.A.A.F. 2006).

Therefore, before admitting evidence in presentencing, the military judge must conclude that, (1) pursuant to R.C.M. 1001(b)(4), the evidence is "directly related to and resulting from" the offenses of which the appellant was convicted; and (2) that pursuant to MIL. R. EVID. 403, the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members[.]".

The appellant argues that PE 2 and PE 5 contained uncharged misconduct that was unrelated to his crimes. We disagree. "Regarding the strength of the connection required between admitted aggravation evidence and the charged offense, [our superior court] has consistently held that the link between the R.C.M. 1001(b)(4) evidence of uncharged misconduct and the crime for which the accused has been convicted must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime." *United States v. Hardison*, 64 M.J. 279, 281-82 (C.A.A.F. 2007).

First, the record establishes that the military judge adhered to the requirement that aggravation evidence meet a higher standard than "mere relevance." *Rust*, 41 M.J. at 478 (citation and internal quotation marks omitted). Next, we find nothing "arbitrary" or "clearly unreasonable" with how the military judge applied the relevant R.C.M. 1001(b)(4) factors in determining that PE 2 and PE 5 were directly related to the offenses for which appellant was found guilty. *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009). The appellant pointed a loaded weapon at fellow Marines and threatened to "blow their heads off."[12] PE 2 and PE 5 describe the appellant's prior, similar, homicidal thoughts of killing other members in his unit. Such evidence in aggravation could reasonably be considered as directly related to the crimes the appellant was convicted of, in terms of time, type, and outcome. Consequently, we find no abuse of discretion in the military judge's finding that the appellant's homicidal and suicidal thoughts detailed in PE 2 and PE 5 were "directly related" to the offenses for which the appellant was found guilty.[13]

Turning to the MIL. R. EVID. 403 analysis, we agree with the appellant that the military judge did not conduct his balancing test on the record before admitting PE 2 and PE 5. "The Court gives military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing." *Manns*, 54 M.J. at 166 (citation omitted). Since the military judge did not conduct the balancing test on the record, we examine the record ourselves. *Id.*

---

[12] PE 1 at 3.

[13] Record at 31-33.

"The overriding concern of [MIL. R. EVID. 403] is that evidence will be used in a way that distorts rather than aids accurate fact finding." *Stephens*, 67 M.J. at 236 (citation and internal quotation marks omitted). The government argues that both PE 2 and PE 5 are probative as rebuttal to the appellant's statements during his providence inquiry regarding his suicidal ideations—that when he pointed the loaded weapon at another Marine his intent was to commit suicide by prompting the other Marine to kill him in his own self-defense. We agree. The record of trial indicates the following responses from the appellant during the providence inquiry:

> I did it because I was hoping that they would respond by doing the same towards me.[14]
>
> . . .
>
> I knew it wouldn't hurt them, but when they pointed at me, I was hoping that they would pull the trigger on me.[15]
>
> . . .
>
> [B]ut I knew it wouldn't happen because I wasn't going to do it. Like I said, I was hoping that they would do the same to me.[16]
>
> . . .
>
> [L]ike I said earlier, I gave them the weapon and I was hoping that they would shoot me[.][17]

PE 2 and PE 5 present evidence contradicting the appellant's assertions that he was pointing his weapon at fellow Marines in the hopes that they would shoot him. We find nothing in PE 2 or PE 5 that distorts the facts of this case or contradicts the stipulation of fact. Both exhibits could reasonably be utilized in making accurate findings of fact with regard to the appellant's intent when he pointed the loaded weapon at another Marine. Furthermore, the possibility for unfair prejudice here is reduced since this was a guilty plea with a military judge determining the sentence rather than members. *Manns,* 54 M.J. at 167. Trial judges "are assumed to be able to appropriately consider only relevant material in assessing sentencing[.]" *Hardison*, 64 M.J. at 284.

The military judge limited his consideration of PE 2 and PE 5. Portions of PE 2 that referred to uncharged misconduct were excluded from consideration. The military judge acknowledged potential relevancy issues

---

[14] *Id.* at 14.

[15] *Id.* at 16.

[16] *Id.* at 18.

[17] *Id.* at 20.

could come up during the government sentencing argument, and all objections by the TDC during the government's sentencing argument were sustained. We are satisfied the military judge was able to sort through the sentencing evidence and apply the appropriate weight in fashioning the sentence adjudged. We find the evidence of the appellant's homicidal and suicidal thoughts contained in PE 2 and PE 5 to have probative value that was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the military judge. The military judge did not abuse his discretion in admitting PE 2 and PE 5.

### III. CONCLUSION

The findings and the sentence, as approved by the CA, are affirmed.

Senior Judge HUTCHISON and Judge FULTON concur.

For the Court

R.H. TROIDL
Clerk of Court