# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32642**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nyakong S. CHUAR**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 August 2021

———————————

*Military Judge:* Tobin C. Griffeth.

*Sentence:* Sentence adjudged 14 November 2019 by SpCM convened at Davis-Monthan Air Force Base, Arizona. Sentence entered by military judge on 3 December 2019: Bad-conduct discharge, confinement for 6 months, and a reprimand.

*For Appellant:* Major Christopher C. Newton, USAF; Major Amanda E. Dermady, USAF.

*For Appellee:* Lieutenant Colonel Charles B. Dunn, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MEGINLEY, Judge:

Contrary to her pleas, a special court-martial composed of officer members found Appellant guilty of one specification of wrongful use of cocaine and one specification of wrongful use of methamphetamine, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] Appellant elected to be sentenced by a military judge, in accordance with Rule for Courts-Martial 1002, and was adjudged a bad-conduct discharge, confinement for six months, and a reprimand. The military judge credited Appellant with 113 days against her sentence for time spent in pretrial confinement.[2] On 26 November 2019, the convening authority took no action on the findings or sentence.[3] On 3 December 2019, the military judge signed the entry of judgment.

Appellant raises two assignments of error: (1) whether the military judge erred in failing to exclude statements Appellant made to her mental health provider, pursuant to Mil. R. Evid. 513, and in failing to exclude the derivative evidence obtained as a result of those statements; and (2) whether the military judge erred in admitting evidence in findings of Appellant's participation in the Air Force's Alcohol and Drug Abuse Prevention and Treatment (ADAPT) program and erroneously instructed the members regarding Appellant's participation in the program.[4] Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

This case was Appellant's second court-martial. In May 2019, Appellant pleaded guilty at a special court-marital for, *inter alia*, wrongful use of various

---

[1] All references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[2] Appellant received 107 days of day-for-day pretrial confinement credit and an additional six days of judicially ordered credit.

[3] Because Appellant was found guilty of the Charge and its two specifications that alleged the commission of offenses after 1 January 2019, Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b, and R.C.M. 1109 and 1110 guided the convening authority's decision on action. *See* Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

[4] Although the legal office sent Appellant and her counsel the record of trial (ROT), there is no indication that Appellant or her counsel received the ROT, as required by R.C.M. 1112(e)(1). Appellant has not raised error on these issues and we find none.

illegal drugs, including marijuana, cocaine, and 3,4-methylenedioxymetham-phetamine (Ecstasy). Appellant did not receive a punitive discharge at her first court-martial; she was released from confinement on 25 July 2019.

On the morning of 29 July 2019, Appellant called her mental health provider, Dr. AC, and told her she felt sick and jittery after consuming cookies at a party that might have contained drugs.[5] Appellant also told Dr. AC that someone at the party told Appellant: "stop eating those cookies, they are going to hit you hard," or words to that effect. Appellant told Dr. AC her heart was racing and that she felt unsafe. Appellant also told Dr. AC she "hadn't slept all night and she didn't feel safe by herself."

Out of concern for Appellant's safety and well-being, Dr. AC called her acting medical director, Captain (Capt) TT. After talking with Capt TT about her concern for Appellant, Dr. AC believed Appellant needed to be evaluated at a medical facility. Appellant then gave Dr. AC permission to report Appellant's situation to someone who could help her. Dr. AC discussed a "plan of action," whereby she would reach out to Appellant's first sergeant, discuss the situation with Capt TT, and then figure out a way to transport Appellant to the emergency room. Appellant consented to these disclosures.

Dr. AC then called Appellant's first sergeant, Master Sergeant (MSgt) JO. Dr. AC told MSgt JO that Appellant "had called [her], she was distressed, said she didn't feel safe by herself, said she may have had some cookies or ingested something, and we needed her transported to the nearest ER." Dr. AC testified that based on her previous training as a mental health provider, she believed this disclosure was necessary. When asked whether it was "important for [MSgt JO] to know the circumstances of why [Appellant] needed to go to the ER," Dr. AC responded, "Yeah, she needed to know which ER she was supposed to go to," and needed to be able to respond to any negative side effects. Dr. AC further elaborated that her intent when she called MSgt JO was that "when [MSgt JO] transported [Appellant] to the emergency department, they had all the working information in order to appropriately triage, treat, detox, what have you, in that position." Dr. AC reiterated that Appellant consented to all of the disclosures.

MSgt JO picked up Appellant at her dorm room and took her to the emergency room at approximately 0830. While driving to Tucson Medical Center (TMC), MSgt JO observed that Appellant seemed jittery, nervous, uneasy, was looking at her hands, and kept touching her fingers. After they arrived at TMC,

---

[5] Dr. AC testified in a closed hearing about the events of the morning in question. The information comes directly from her testimony at that closed hearing and was included in the military judge's essential findings of fact.

Appellant voluntarily provided a urine sample and continued to allow MSgt JO to be present during her medical treatment. While MSgt JO was still in the room, a physician's assistant (PA) first asked Appellant whether it was okay if MSgt JO was in the room when he disclosed the results of Appellant's urine sample. Appellant agreed and the PA then informed Appellant that her urine sample tested positive for cocaine.

Based on her observations of Appellant and the results of Appellant's urinalysis, on 29 July 2019, MSgt JO prepared an affidavit that she had reason to believe Appellant had used drugs and evidence of that use would be found in her body. Relying on this affidavit, Lt Col MK ordered a probable cause search of Appellant's blood and urine for illegal drugs. Pursuant to that search authorization, Appellant provided samples of her urine and blood, which tested positive for methamphetamine and its metabolites, as well as cocaine and its metabolites.

## II. DISCUSSION

### A. Failure to Exclude Appellant's Statements made to her Mental Health Provider

### 1. Additional Background

Appellant's trial defense counsel moved to suppress statements Appellant made to her mental health provider, Dr. AC; the results of the emergency room visit; and the search and seizure of her blood and urine. The Defense also moved to suppress derivative evidence of Appellant's privileged communications to her mental health provider pursuant to Mil. R. Evid. 513. The military judge denied the motion. Appellant argues the military judge erred, pursuant to Mil. R. Evid. 513, by failing to exclude these statements and the derivative evidence obtained therefrom. Specifically, Appellant argues that once Dr. AC "attained [sic] Appellant needed medical treatment, the doctor simply needed to inform [MSgt JO] that Appellant needed medical treatment and nothing more." Appellant further argues that "[w]hile in Appellant's hospital room, in which Appellant and society would recognize there is a reasonable expectation of privacy, medical professionals disclosed to Appellant" the positive lab result for cocaine with MSgt JO present. Appellant further notes: "Armed with this information gathered from Appellant's treating medical professionals, [MSgt JO] executed an affidavit to support search authorization of Appellant's blood and urine."

The military judge ruled that Appellant had no reasonable expectation of privacy "based off of her own actions and the surrounding facts and circumstances." The military judge ruled that Appellant consented to MSgt JO driving Appellant to TMC to be seen by a doctor, consented to a urine test while at

TMC, and consented to MSgt JO's presence in the room when the results were disclosed. The military judge also ruled that the results of the urine test "were never intended by [Appellant] to be confidential." The military judge also noted that MSgt JO "recognized strange behaviors by [Appellant] that would have or did also support[ ] the valid search warrant." Finally, the military judge ruled there was no evidence that any statements made by Appellant were the result of a custody, interrogation, or "overwhelming her will," and that Appellant's statements were "the product of an essentially free and unconstrained choice by its [sic] maker."

The military judge, quoting Mil. R. Evid. 513(d)(6), also found there was no privilege "when necessary to ensure the safety and security of military personnel." In concluding his ruling, the military judge found none of the evidence the Government sought to introduce was protected under Mil. R. Evid. 513 and therefore denied the Defense's motion.

### 2. Law

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

"The question of whether a communication is privileged is a mixed question of fact and law. Factual findings are reviewed for clear error and legal questions, including the interpretation of a rule's language, are reviewed de novo." *United States v. Harpole*, 77 M.J. 231, 234–35 (C.A.A.F. 2018) (citing *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006)).

Mil. R. Evid. 513(a) states:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Whether an exception to Mil. R. Evid. 513 applies "is necessarily a fact-specific determination for a military judge to consider with an accurate awareness of the facts underlying the dispute." *United States v. Jenkins*, 63 M.J. 426, 430 (C.A.A.F. 2006).

Mil. R. Evid. 513(b)(4) states: "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional services to the patient or those reasonably necessary for such transmission of the communication." Mil. R. Evid. 513(d)(6) states that there is no privilege under Mil. R. Evid. 513 "when necessary to ensure the safety and security of military personnel." *See, e.g.*, *Jenkins*, 63 M.J. at 430 (upholding military judge's determination that Appellant's mental state posed a risk to the safety of others or himself).

Mil. R. Evid. 311(a) states:

> *General rule.* Evidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused if:
>
> (1) the accused makes a timely motion to suppress or an objection to the evidence under this rule;
>
> (2) the accused had a reasonable expectation of privacy in the person, place, or property searched; . . . and
>
> (3) exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system.

For consent searches to be valid, "consent must be given voluntarily. Voluntariness is a question to be determined from all the circumstances . . . . Mere submission to the color of authority of personnel performing law enforcement duties or acquiescence in an announced or indicated purpose to search is not a voluntary consent." Mil. R. Evid. 314(e)(4).

**3. Analysis**

We find the military judge did not err in denying Appellant's motion to exclude Appellant's statements made to her mental health provider and the subsequent evidence derived therefrom. The derivative evidence Appellant refers to are the test results of Appellant's emergency room visit and the search and seizure of her blood and urine, which Appellant argues were derived from her communication with Dr. AC.

Regarding statements made by Appellant to Dr. AC, the military judge ruled that none of the evidence the Government sought to admit was protected under Mil. R. Evid. 513. The military judge's findings of fact support his ruling for two reasons. First, the military judge found that Appellant's communication to Dr. AC was made for medical treatment, as she told Dr. AC that she felt sick and jittery after eating cookies that might have had drugs in them. The military judge also found as a fact that Appellant consented to Dr. AC calling MSgt JO so that MSgt JO could take Appellant to the emergency room. There

was no evidence that Appellant was seeking treatment for a mental or emotional condition. The military judge also stated that "no mental health records [had] come before the court."

Second, the military judge found "there is no privilege under [Mil. R. Evid. 513(d)(6)] 'when necessary to ensure the safety and security of military personnel.'" Given Dr. AC's testimony, the military judge's findings of fact and assessment on the law, and Appellant's "own actions and the surrounding facts and circumstances" regarding the possibility she may have consumed drugs, the military judge could reasonably conclude Appellant's safety and security were at issue and that Appellant accordingly did not have a privilege under Mil. R. Evid. 513. Therefore, we find the military judge did not abuse his discretion in admitting statements made by Appellant to Dr. AC.

We also find there was no unlawfully derived evidence from those statements. Other than the military judge's finding of fact that Appellant consented to Dr. AC informing MSgt JO that Appellant needed medical treatment, there is no indication that Appellant restricted or qualified what Dr. AC could disclose to MSgt JO, or what MSgt JO could further disclose to Appellant's medical providers.

With respect to MSgt JO's involvement at TMC, Appellant asserts that the Government conducted an unlawful search of Appellant's blood and urine in violation of the Fourth Amendment[6] and Mil. R. Evid. 311. We disagree. The military judge found that "the results of Appellant's urine test were never intended to be confidential" under Mil. R. Evid. 513(b)(4), and that Appellant "did not have a reasonable expectation of privacy to her urine test results based off [her] own actions and the facts and circumstances presented." He further found that Appellant voluntarily consented to the urinalysis, consented to MSgt JO's presence in the medical room when the results were disclosed, and that MSgt JO "recognized strange behaviors by the Accused that would have or did also support[ ] the valid search warrant." Reviewing the record, we find the military judge's conclusions of law are supported by his findings of fact. We further find the military judge did not abuse his discretion in admitting evidence related to Appellant's emergency room visit and the subsequent search and seizure of Appellant's blood and urine by military authorities.

---

[6] U.S. CONST. amend. IV.

**B. Appellant's Participation in ADAPT**

**1. Additional Background**

Appellant next argues the military judge erred by permitting the Government to present evidence in findings of Appellant's participation in ADAPT and by erroneously instructing the members regarding Appellant's participation in the program.[7]

In early September 2018, after Appellant tested positive for cocaine, her commander, Lieutenant Colonel (Lt Col) MK, referred Appellant to the ADAPT program. After entering the program, pursuant to Air Force Instruction (AFI) 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program* (18 Jul. 2018), Appellant was subject to random drug testing for a year after discharge from the program.

Prior to trial, the Government filed a request for the military judge to take judicial notice of provisions of AFI 44-121 that outline mandatory drug testing while a member is in the ADAPT program and after the member has been discharged from the treatment program. The Government justified its judicial notice request on the basis that Appellant might "seek to present an innocent ingestion defense, and claim she unintentionally ingested cocaine and methamphetamine after eating cookies at a party." The Government noted that it "intend[ed] to rebut her alleged excuse with a motive to fabricate." Specifically, the Government argued that the ADAPT program's random drug testing provided Appellant with a reason to "preempt a possible random drug test with an innocent ingestion excuse given to her provider." The Defense objected to the Government's proposed judicial notice, and an instruction about ADAPT, claiming the proffered information would amount to evidence of uncharged misconduct under Mil. R. Evid. 404(b), was not relevant, highly prejudicial, and not admissible under Mil. R. Evid. 403.

The military judge found as fact that paragraph 3.18.4 of AFI 44-121 states that "[c]ommanders will ensure that [active duty] personnel with a drug history undergo monthly, random drug testing for one year following their most recent discharge from a treatment program." The military judge also found as fact that Appellant gave notice of an innocent ingestion defense by claiming she unintentionally ingested drug-laced cookies at a party, and that the "Government intend[ed] to use the judicial notice to help rebut [Appellant's] innocent ingestion defense by showing a motive to fabricate." The military judge ruled that he would "take judicial notice of the provisions of AFI 44-121" and would allow the Government to present evidence Appellant was in ADAPT, but would not permit any evidence of why Appellant was in the ADAPT program.

---

[7] The court notes that Dr. AC testified she was not part of the ADAPT program.

In his ruling, the military judge drafted an instruction he would provide to the members at the appropriate time in the trial.

During findings, MSgt JO testified, in part, that while en route to the hospital, Appellant "seemed nervous, jittery. She kept looking at her fingers, or touching her fingers as if she were trying to feel them." Appellant told MSgt JO that the night prior, "she went to a party, and ate a cookie that she thought was clean. And afterwards she felt sick." Following MSgt JO's testimony, the Government called Lt Col MK, Appellant's squadron commander, who testified that on 7 September 2018 he referred Appellant to the ADAPT program. Lt Col MK did not provide any other information regarding ADAPT, nor did any other witness.

Immediately after the testimony of Lt Col MK, the military judge instructed the members of the following:

> Members, I have taken judicial notice of AFI 44-121, which regulates the ADAPT program. This means that you are permitted to recognize and consider the facts judicially noticed without further proof. It should be considered by you as evidence with all other evidence in the case. You may, but are not required to, accept as conclusive any matter I have judicially noticed.

The military judge then allowed trial counsel to read the following to the members:

> Paragraph two, AFI 44-121 regulates the ADAPT program and mandates that personnel will undergo substance abuse monitoring during treatment. . . . Commanders will ensure that active duty personnel undergo monthly random drug testing for one year following their most recent discharge from a treatment program.

Finally, the military judge then read the following to the members:

> Members, you may consider this evidence for the limited purposes of its tendency, if any, to prove the accused's motive to fabricate another reason for the positive urinalysis test result. You may not consider this evidence for any other purpose, or speculate why the accused was in ADAPT. And you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that she therefore committed the offense charged.

The Government also called security forces Investigator SB to testify. Investigator SB testified that in 2019 the value of cocaine was "about $30 a gram, up to $900 per ounce," and that the average value of methamphetamine was

"about half of that." Investigator SB testified that cocaine is typically ingested through the nose and methamphetamine is "usually smoked." When asked by trial counsel whether, in the cases where he investigated drug use, Investigator SB had ever heard of cocaine being baked into a cookie or methamphetamine being laced in a cookie, he responded, "No, never." He explained that people using those drugs usually "have a really big problem with addiction and they try to get [the drugs] into their system and get the high as fast as possible."[8]

In addition to the testimony of witnesses, the Government presented evidence obtained as a result of the search and seizure of Appellant's urine, including the positive drug tests, to convict Appellant. During the testimony of one of the Government's witnesses, a member submitted a question asking why Appellant was in ADAPT and whether the referral to ADAPT was voluntary or involuntary; however, the military judge did not permit the questions. In its case-in-chief, the Defense did not submit any evidence, nor did Appellant testify. Before deliberations, the military judge repeated the instruction he gave to the members regarding his taking of judicial notice of AFI 44-121.

### 2. Law

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *Erickson*, 76 M.J. at 234 (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *Ellis*, 68 M.J. at 344 (citing *Mackie*, 66 M.J. at 199).

A military judge may take judicial notice of both adjudicative facts and law. Mil. R. Evid. 201 provides the substantive and procedural requirements for taking judicial notice of an adjudicative fact. Mil. R. Evid. 202 provides the substantive and procedural requirements for taking judicial notice of law. Mil. R. Evid. 202(a) states that "[i]f a domestic law is a fact that is of consequence to the determination of the action, the procedural requirements of Mil. R. Evid. 201 [except as it pertains to instructions to members] apply." A military regulation is a proper subject of judicial notice. *United States v. Ayers*, 54 M.J. 85, 90 (C.A.A.F. 2000).

"We will review a military judge's decision whether to take judicial notice for an abuse of discretion. That discretion is abused when evidence is admitted

---

[8] Investigator SB was not proffered by the Government as an expert witness. However, trial defense counsel did not object to his testimony, and Appellant has not raised error on appeal.

based upon an erroneous view of the law." *United States v. Lutes*, 72 M.J. 530, 533 (A.F. Ct. Crim. App. 2013) (citations omitted).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion, and cannot be used to show predisposition toward crime or criminal character. However, such evidence may be admissible for another purpose, including to show motive, intent, plan, absence of mistake, or lack of accident. Mil. R. Evid. 404(b)(2); *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (citation and footnote omitted). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989).

Mil. R. Evid. 403 permits the military judge to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

A military judge's rulings under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

**3. Analysis**

The military judge did not abuse his discretion by permitting the Government to present evidence that Appellant was in the ADAPT program, and by taking judicial notice of provisions of AFI 44-121. The findings of fact regarding Appellant's extensive drug abuse history, her prior participation in the ADAPT program, and most importantly, her subsequent comments about the possibility of drugs being laced in food she consumed, are supported by the record. Appellant's comments to Dr. AC and MSgt JO about having potentially consumed drug-laced cookies tend to show Appellant was aware that she had consumed a substance that had some physiological effect on her. Appellant's statements reasonably convey that she was aware she consumed a contraband substance. Her involvement in ADAPT and the program's requirement to drug test recent participants for a year after discharge is evidence of a motive for Appellant to fabricate an explanation for what may result in a potential positive urinalysis result should she be tested. Taken together, Appellant's statements were evidence upon which the factfinder might rely on to conclude Appellant knowingly ingested a contraband substance and that she knew her use was illegal.

Additionally, the military judge conducted a Mil. R. Evid. 403 balancing test, concluding that taking judicial notice of relevant provisions of AFI 44-121

was not "substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." He noted his ruling prohibited the Government from introducing any evidence of uncharged misconduct under Mil. R. Evid. 404(b), and did not allow the Government to present any evidence as to why Appellant was in the ADAPT program. The military judge was also aware of the potential misuse of evidence regarding Appellant's participation in ADAPT; he specifically told the members they could only consider Appellant's participation "for the limited purpose of its tendency, if any, to prove [Appellant's] motive to fabricate another reason for a positive urinalysis test result." Court members are presumed to follow the military judge's instructions, *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991), and there is nothing in the record to suggest that they did otherwise in this case. We find the military judge did not abuse his discretion on this issue.

Finally, even if the military judge had abused his discretion by taking judicial notice of provisions of AFI 44-121 and allowing evidence she was in the ADAPT program, we would not grant relief because this evidence did not substantially influence the findings. *See United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015) ("For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings.") (internal quotation marks and citation omitted). The Government's case was strong; it presented scientific evidence, an eyewitness account of Appellant's behavior, and testimony about how cocaine and methamphetamine are typically consumed. Accordingly, we do not find that evidence of Appellant's participation in the ADAPT program, nor the taking of judicial notice of the provisions pertaining to the ADAPT program, had a substantial influence on the findings, particularly given the military judge's limited use of the evidence.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), Uniform Code of Military Justice, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court